E. R. GODFREY & SONS COMPANY v. CITIZENS' NATIONAL
BANK OF NORFOLK.

FILED APRIL 17, 1902.     No. 10,652.

Commissioner's opinion, Department No. 1.

1. Chattel Mortgage: RECORD: CONFLICTING EVIDENCE: CREDITORS:
QUESTION FOR JURY. Where a chattel mortgage is kept from
record for a period of sixteen months, and the evidence is con-
flicting as to whether it was done by agreement between the
parties, and rights of creditors have intervened between the
execution and filing of the mortgage, the question of the valid-
ity of the mortgage as to such creditors, in a replevin action
brought by the mortgagees, is a question of fact for the jury.

2. ———: QUESTION FOR JURY. Where a creditor takes possession of
a stock of merchandise, claiming an agreement between himself
and the debtor by which the latter turned the goods over as
a pledge of personal property to secure the amount due, and
there is evidence tending to show that the creditor took pos-
session by virtue of a chattel mortgage, the character of the
creditor's possession is for the determination of the jury.

3. Mortgage: STOCK OF MERCHANDISE. A mortgage upon a stock of
merchandise under the general description attaches only to
such merchandise as was in stock when the mortgage was exe-
cuted, and not to stock afterwards added by purchase.

4. Evidence: DIRECTING VERDICT. Evidence examined and *held* not
to warrant a peremptory instruction directing the jury to
return a verdict for plaintiff below.

ERROR from the district court for Madison county.
Tried below before ROBINSON, J. *Reversed.*

*Mapes & Hazen,* for plaintiff in error.

*George L. Whitham, Allen & Reed* and *Smith & Smyth,*
contra.

· KIRKPATRICK, C.

This is a replevin action tried in the district court of
Madison county on March 16, 1898. Defendant in error,
the Citizens' National Bank of Norfolk, in its petition
filed in the case, claimed to have a special interest in cer-

tain personal property, describing it, on account of a chattel mortgage executed and delivered to it by the Norfolk, Nebraska, Produce Company, and also that it was entitled to the possession of the goods as pledgee, the Norfolk, Nebraska, Produce Company having turned the property over into its possession with permission to sell for the satisfaction of the amount due the bank from the produce company. Joseph J. Clements, the sheriff of Madison county, took possession of the personal property for which the replevin action was brought under an execution issued upon a judgment against the produce company in favor of E. R. Godfrey & Sons Company, plaintiff in error. In the district court, before trial, by agreement of all parties, the execution creditor, E. R. Godfrey & Sons Company, was substituted as party defendant in place of the sheriff, and all proceedings thereafter had were between plaintiff in error and defendant in error herein. After the introduction of testimony in the case, at the request of defendant in error the court instructed the jury to return a verdict in its favor, which was done, and judgment entered on the verdict. A motion for a new trial was overruled, and the case is brought to this court for review upon error proceedings.

Many assignments of error are made in the motion for a new trial, and in the petition in error, all of which will not require consideration. It is contended by defendant in error that the assignments in the petition in error are not sufficiently definite and certain to present any question for the consideration of this court. It may be said, however, that the petition in error sufficiently presents two questions: First, the ruling of the court upon the motion filed by plaintiff in error asking for a dismissal of the action on the ground that the affidavit in replevin was void; and, second, that the court erred in directing a verdict for defendant in error, plaintiff below.

Regarding the first question, it may be said that the affidavit in replevin was signed by the president of defendant in error bank, and was sworn to before George L.

Whitham, a notary public, who was the attorney for the bank in the replevin proceedings. Plaintiff in error in the district court filed a motion asking the court to dismiss the action for the reason that the affidavit filed was sworn to before the attorney of record for defendant in error. While this affidavit was probably voidable, it was clearly not void, and it would have been erroneous for the trial court to have sustained the motion to dismiss the action upon this ground. Had plaintiff in error limited its motion to quashing the affidavit, or asked the court for an order requiring defendant in error to file an amended affidavit, it is probable that the motion would have received consideration at the hands of the trial court. The question of the right of an attorney in a case to swear a client to an affidavit for a provisional remedy such as that in the case at bar was considered by this court in the case of *Horkey v. Kendall*, 53 Nebr., 522, in which it is said that an affidavit to procure an attachment taken before a notary public who is also attorney for one of the parties, is merely irregular, and not a nullity, and can not be collaterally attacked. We are unable to find merit in this contention of plaintiff in error.

The next contention is that the court erred in directing a verdict for defendant in error. A determination of this question requires a consideration of the evidence offered on the trial. The facts disclosed by the record are briefly as follows: The Norfolk, Nebraska, Produce Company was organized as a corporation, and was engaged in the general produce business at Norfolk. The company kept a cold storage warehouse, and bought and sold butter, eggs and other perishable goods in large quantities. Prior to May, 1895, it was indebted to the Citizens' National Bank of Norfolk in a large sum. This indebtedness had been reduced by part payments, until in May or June of 1895 the indebtedness was $1,600, represented by two promissory notes, one for $1,000 and the other for $600, due in ninety and sixty days, respectively. These two notes were secured by a chattel mortgage, which does not appear in the record.

On October 11, 1895, there was a renewal of the notes in a like amount, and a new mortgage was given to secure said notes and renewals thereof, covering several thousand egg-cases, fillers for egg-cases, several thousand pounds of butter and cheese, and several hundred cases of eggs, as well as other personal property. This mortgage was not put upon record until the 13th day of February, 1897. In the meantime there had been many renewals of the notes, and the indebtedness had been reduced to $1,490. On that date, and during this time, the produce company had sold and replaced many times all the goods described in the mortgage except some office chairs and fixtures of inconsiderable value. In the fall of 1896, some four months before the mortgage was placed of record, plaintiff in error sold to the produce company two car-loads of apples, for which the company agreed to pay; the purchase price for the apples, with accrued interest, on March 2, 1897, being $635.49. About the 12th day of February, 1897, the bank seems to have become convinced that the produce company was in failing circumstances, and on that day the president of the bank went to some of the officers of the produce company, the president of the produce company being at the time absent, and insisted upon the indebtedness being paid. The produce company being unable to pay the amount due, agreed to turn over to the bank its stock of goods. Whether the agreement was to turn over only the goods described in the mortgage or all the goods on hand is a subject of conflict in the evidence. The secretary and vice-president of the company went with the president of the bank to the attorney for the bank, who wrote on the back of the chattel mortgage dated October 11, 1895, a memorandum as follows: "Feb. 12th, 1897. The mortgagor herein consents that the Citizens' National Bank, mortgagee herein, may sell the goods taken this day by virtue of and described in this mortgage at private sale. Norfolk Neb. Prod. Co. F. L. Eastabrook, Sec.; F. R. Dexter, V. P." The bank, by its attorney and agent, immediately took possession of the stock of goods of the pro-

duce company, and posted a notice on the building that
it had taken possession of the goods as mortgagee.  Among
the goods taken at this time were the two car-loads of ap-
ples which plaintiff in error had shipped to the produce
company.  The evidence discloses that plaintiff in error
had no knowledge of the existence of the chattel mortgage
given October 11, 1895, and a member of the company tes-
tified that they would not have extended credit to the pro-
duce company had they known of the existence of the mort-
gage.  The testimony also shows that all of the egg cases,
egg-case fillers, etc., in stock and taken possession of by
the bank, were bought long subsequent to the execution of
the mortgage in question, and no part of the property orig-
inally mortgaged appears to have been in existence at this
time except a small part of the office furniture and other
fixtures.  The president of the produce company testified
positively that at the time the first mortgage was given, in
May or June, 1895, it was agreed between the bank and
the officers of the produce company that the chattel mort-
gage then given, and all renewals of the same, should not
be placed of record by the bank; and that the produce com-
pany should have the right to sell any and all of the prop-
erty described in the mortgage in the usual course of
business, and replace the same from time to time with new
stock.  This agreement is denied by some of the officers
of the bank, and by at least one of the officers of the pro-
duce company.  In February, 1897, plaintiff in error in-
stituted an action in the county court of Madison county,
and recovered a judgment in the amount due it for the
apples sold.  The sheriff levied an execution upon the
property, which was subsequently taken away from him
in this replevin action by the bank.  When the bank, on
March 13, 1897, took possession of the stock of goods, it
put the secretary of the produce company in charge as its
agent, who proceeded to sell the goods, and realized from
their sale some $1,200 or $1,300, leaving a balance due the
bank after expenses paid of more than $400.  The value
of the property replevied was agreed upon at the trial.

35

The question requiring consideration is whether, under this state of facts, the court erred in peremptorily instructing the jury to return a verdict for defendant in error. It appears from the evidence, first, that the mortgage was withheld from record for a period of sixteen months; second, that the plaintiff in error extended credit to the produce company during the time intervening between the execution and recording of the mortgage. If this chattel mortgage was kept from the record in pursuance of an agreement between the mortgagor and mortgagee, and if, in consequence of its absence from the record, plaintiff in error extended credit to the mortgagor which it would not otherwise have extended, then, under the rule announced and adhered to by this court, the mortgage was null and void as against plaintiff in error. *Ackerman v. Ackerman,* 50 Nebr., 54. To authorize an instruction to find for defendant in error, the evidence must be of such a character that reasonable minds could not differ as to the conclusion to be drawn therefrom. Can it be said from the record that there was not sufficient evidence to support a finding of the jury that the mortgage was withheld from the record in order to permit the mortgagor to secure credit which it could not otherwise have obtained, and that plaintiff in error did sell two car-loads of apples to the mortgagor relying upon the non-existence of this mortgage? R. A. Stewart, an officer of the bank, testified as follows:

"As I understood it, if we had filed this mortgage and taken the property under it,—the mortgage was not good to us when filed unless we did take the property, for it was a business they were selling goods out of all the time. Had we done that, we would have either to close them out, or we would have our mortgage. It would have been no use to do it; and as long as we had security that we considered amply good, and they seemed to be doing a profitable business, of course we didn't close them up.

Q. And they understood this?

A. Yes, sir.

Q. And you knew also that, had that mortgage been placed on file, and you not take possession, you knew they wouldn't have gotten any credit to do business?

A. I presume, if the mortgage had been placed on file, and we hadn't done anything under it, the mortgage would have been comparatively useless."

The president of the produce company, as already indicated, testified positively that an agreement did exist between his company and the bank that the mortgage, originally given and those given in renewal thereof were to be kept from record. In view of the nature of the business transacted by the produce company, the conflict of the evidence as to the agreement permitting a continued sale and replacement of the bulk of the goods described in the mortgage, and the undisputed evidence of plaintiff in error that credit would not have been given had it known of the existence of the mortgage, as well as the evidence above quoted, it was certainly for the jury to say whether this chattel mortgage was void as against plaintiff in error, and this question should have been submitted to them for their determination.

There seems to be another valid reason why the action of the trial court was wrong. It clearly appears from the evidence that none of the property taken by the bank from the produce company was in existence at the time of the execution of this mortgage except some furniture and office fixtures of small value. There can be no doubt that property not in existence at the time the mortgage was executed, and which was purchased at a subsequent date, was not covered by the mortgage in question. *Tolerton & Stetson Co. v. First Nat. Bank of Wayne*, 63 Nebr., 674.

Defendant in error seeks to avoid the force of the objections heretofore mentioned by claiming that it not only took possession of the goods as mortgagee, but that the goods were pledged to it as security for the payment of the debt, and that it also took possession of the goods as pledgee, and was so in possession at the time the sheriff made the levy under the execution for plaintiff in error.

Whether defendant in error can sustain its right to the possession of the goods upon the theory that it was pledgee may well be questioned in the face of the memorandum on the back of the mortgage, heretofore quoted, and in the face of the question whether or not the produce company, by action of its proper officers, pledged the goods in question to the bank. The most that can be said for the contention of defendant in error in this regard is that the nature of its possession of the goods was itself a question which should have been submitted to the jury under proper instructions. Whether the possession of the bank was that of a pledgee or mortgagee, the correct determination of this case does not require us to decide, and that question is not decided. From what has been said it is clear that the action of the trial court in instructing the jury for defendant in error was wrong, and it can not be sustained. It is therefore recommended that the judgment of the district court be reversed and the cause remanded.

HASTINGS and DAY, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.