Baker v. State.

---

## ELMER C. BAKER v. STATE OF NEBRASKA.

FILED NOVEMBER 20, 1924. No. 24051.

1. **Criminal Law: WITNESSES: CREDIBILITY.** It is elementary that where, in a criminal prosecution, the evidence conflicts in respect of material facts, the credibility of the respective witnesses is for the jury.

2. **Embezzlement: DE FACTO OFFICERS.** Where a person is employed in the office of a county treasurer and as such employee

Baker v. State.

performs the duties which regularly devolve upon a deputy county treasurer, and, by his conduct, holds himself out to the public as such official, but has not given the required statutory bond nor taken the required statutory oath, such person thereby becomes, and is, a deputy county treasurer *de facto* and is a county officer, and as such is liable to prosecution, in a proper case, for embezzlement of public money belonging to the county, under section 9634, Comp. St. 1922.

3. **Officers De Facto.** "Where an office exists under the law, it matters not how the appointment of the incumbent is made, so far as the validity of his acts are concerned. It is enough that he is clothed with the insignia of the office, and exercises its powers and functions." *Norton v. Shelby County*, 118 U. S. 425.

4. **Criminal Law:** CHANGE OF VENUE: AFFIDAVITS: REVERIFICATION. Where a defendant moves for a change of venue in a prosecution for a felony, and it apears that the counter affidavits in resistance of defendant's motion have been verified by a notary public who is an attorney of record for the state, it is not reversible error for the court to permit such affidavits to be withdrawn from the files for reverification before a competent authority and be thereafter refiled.

5. ————: ————. An application for a change of venue is addressed to the sound judicial discretion of the court. Even where the existence of prejudice is shown to have once existed, it is not error to refuse a change of venue where it appears that the prejudice has subsided and a fair and impartial jury can be obtained.

6. ————: ASSISTANT COUNSEL. Where a county attorney requests and the court appoints counsel to assist in the prosecution of a felony case, a verdict will not be vacated for that reason in the absence of a showing which discloses that the defendant has been thereby prejudiced in his substantial rights.

ERROR to the district court for Lincoln county: J. LEONARD TEWELL, JUDGE. *Affirmed.*

*Beeler, Crosby & Baskins,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Harry Silverman, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, DAY, GOOD and THOMPSON, JJ.

Dean, J.

An indictment was returned in Lincoln county wherein Elmer C. Baker, defendant, was charged with embezzling, and converting to his own use, $9,853.80, the property of Lincoln county, while he was the duly appointed, qualified and acting deputy county treasurer. The jury returned a verdict of guilty and fixed the amount of the embezzlement at $4,000. Thereupon defendant was sentenced to serve a term in the penitentiary of not less than three nor more than ten years and in addition thereto a fine was assessed against him in the sum of $8,000 under a statute which requires that, where a jury finds a defendant guilty of embezzling public money, in addition to the sentence, he shall be fined by the court in double the sum of the embezzlement as found by the jury. Comp. St. 1922, sec. 9634. Defendant, alleging error, has brought the record here to have it reviewed.

H. E. Crandall is a county treasurer examiner. Sometime in April, 1923, he went to North Platte to check the county treasurer's office. From his evidence it appears that Mr. Souder, the county treasurer, was not in the office when he first called, and that the defendant, " Mr. Baker, was then in charge," and that he immediately began his examination, but did not see Mr. Souder until " just before closing time that day." He found three certificates of deposit issued by the " Bank of Lincoln County at Hershey," in the sum of $5,000 each, which " ran to S. M. Souder, treasurer," and he " accepted them as part of the cash." It was subsequently disclosed, however, that the county treasurer had no authority to negotiate for the certificates of deposit in question.

Mr. Larsen is an accountant. With his assistants he made an investigation of the condition of the county treasurer's office. He arrived at North Platte to begin work sometime in the last week of April and began his investigation the first week in May, 1923. On the evening of his arrival, or in the nighttime, a fire was discovered in the courthouse by which it was so greatly damaged that it could no longer

be used by the county. The search for such records as would assist in the investigation of the county treasurer's office was begun the third day after the fire. Some of the records of this office were found in piles on the floor of the district courtroom, " pretty closely together " and not " over three or four feet apart," in that part of the court-room which some witnesses designated as " the oil spot," a place where some sort of oil had apparently been applied to the documents which were discovered on the floor. The charred fragments of the three $5,000 certificates of de-posit, referred to by witness Crandall, were identified and are in the record. It may be noted that the county treasur-er's office was located on the first floor of the courthouse, but the district courtroom, where the data of the county treasurer's office were found, was located on the second floor.

All of the data above referred to, which included more than 30 of defendant's salary checks, in sums ranging from $83 to $150 each, with his signature indorsed thereon, and which were cashed by him, and over 400 exhibits, called " I O U " slips, and marked " I O U Receipts of E. C. Baker," with his signature thereon, and also certain verifying slips of adding machine tape, are in evidence. The "I O U" re-ceipts designated sums of money, varying from $3 to $100 each, and this money the state contends was taken, from time to time, from the money drawer by defendant. Some of the checks and " I O U " receipt exhibits, in evidence, were blackened and charred to some extent by the fire and some were apparently so thoroughly soaked with oil that it became necessary to run them through a wringer to ex-tract the oil. These checks and " I O U " exhibits for the most part were found in the so-called " oil spot " upstairs in the district courtroom. A few exhibits more damaged than the rest, it was found necessary, for the purpose of the trial, to preserve in envelopes which are attached to the record. But, for the most part, the exhibits are plainly decipherable. Defendant's salary checks bore the name of S. M. Souder over the printed designation " County Treas-

urer," and below that designation, with one exception, appeared the letter "B" just in front and to the left of the printed designation "Deputy." It appears that on these exhibits the name of "S. M. Souder" was written by defendant, and the letter "B." to designate himself, with the one exception noted above, was written in by defendant below the treasurer's name and opposite the printed designation "Deputy" which appeared in the check. Defendant testified that these salary checks were written by authority of the county treasurer.

In his own behalf defendant testified that his employment in the county treasurer's office began in the early part of 1919 and continued while Mr. Souder was county treasurer; that at first his salary was $1,000 a year and later was raised to $105 a month, and subsequently, and for a greater part of the time, it was $150 a month; that for about three years of his employment he knew the combination of the safe in the treasurer's office; that it was with Mr. Souder's consent that he secured advancements on his salary by taking cash from the money drawer and placing an "I O U" slip therein showing the amount so taken; that such "I O U" slips were carried in the drawer as cash until the end of the month, when the remainder of his salary was taken from the drawer, in cash, and the "I O U" slips were thrown into the back part of the drawer in a separate compartment, and that, as at times happened, "when he made money outside, he would sometimes put the cash in the drawer and take up the slips and throw the slips in the back part of the drawer." Mr. Baker denied that he ever at any time removed any of the "I O U" slips which represented the advancements taken from the cash drawer without replacing the cash item and that he did not know "what finally became of those accumulating receipts and slips and matters of that kind."

The contention of the state is that, after deducting defendant's salary for the period of his employment from the amount of money that came into his possession during the same period, the remaining amount, as shown by the state's

evidence and the exhibits, was over $4,000, that being the amount embezzled as found by the jury. But defendant in his brief says: "It is impossible in any way to handle the evidence in this case to make up the sum of $4,000." True, the indictment charged defendant with the embezzlement of $9,853.80, and it is also true that the record does not show why the jury brought in a verdict against defendant in the sum of $4,000 when the evidence would have supported a verdict for a larger sum. Nor is there now, in the present state of the record, any way by which this inscrutable fact may be found out from the record before us. But it is sufficient if the evidence supports the verdict. And while the discrepancy is trifling in amount, nevertheless it is favorable to defendant. To be sure, in the absence of confession, it is to be expected that the evidence will conflict. However, the issues involved questions of fact and, notwithstanding an able defense, it appears that the jury rejected the evidence of defendant and, except as to a trifling sum, they accepted as true the evidence of the state, and on this point it supports the verdict.

Counsel contend that the conviction of defendant cannot stand in any event because, as argued, he was not a deputy county treasurer *de jure*, or *de facto*, until January 3, 1923, when he filed a bond and took an oath, and that not until then did he become a deputy county treasurer. Counsel also contend that, even if defendant was a regularly appointed and qualified deputy county treasurer, during all of the period involved in this action, or if he was a *de jure* or *de facto* deputy county treasurer during this period, he did not come within the language or the meaning of section 9634, Comp. St. 1922, under which the indictment was drawn, in that he was not, as argued in the brief, " a public officer or other person charged by law with the collection, receipt, safe keeping, transfer or disbursement of public moneys." Section 9634, so far as applicable here, reads:

" If any officer or other person charged with the collection, receipt, safe-keeping, transfer or disbursement of the public money or any part thereof, belonging to the state or

to any county or precinct, organized city or village or school district in this state, shall convert to his own use * * * any portion of the public money * * * received, controlled or held by him for safe-keeping, transfer or disbursement, * * * every such act shall be deemed and held in law to be an embezzlement of so much of the said moneys or other property as aforesaid, as shall be thus converted, * * * which is hereby declared to be a high crime, and such officer or person or persons shall be imprisoned in the penitentiary not less than one year nor more than twenty-one years, according to the magnitude of the embezzlement, and also pay a fine equal to double the amount of money or other property so embezzled as aforesaid."

In the use of the word deputy it will be presumed that the legislature used it in its ordinary and legal sense. 1 Bouvier's Dictionary; Webster's New International Dictionary.

Sections 5064, 5065, and 5070, are a part of article XVIII, ch. 53, Comp. St. 1922. This chapter refers generally to both state and county officers. Section 5064 provides, among other things, that each county treasurer may appoint a deputy, for whose acts he shall be responsible, and from whom he shall require a bond. Section 5065 provides that, " in the absence or disability of the principal, the deputy shall perform the duties of his principal pertaining to his own office." Section 5070 provides that "each deputy shall take the same oath as his principal." This section makes no distinction as between state and county officers. Section 5039, Comp. St. 1922, among other provisions, contains this: " All official bonds of county * * * officers must be * * * made payable to the county."

It is clear that defendant, at all times material to this action, held himself out to the public as deputy county treasurer and performed the duties of the office in the absence of his principal. From his brief it appears that he was the only employee in the office who had " the combination of the money safe " and that he was the " only one who could write checks." Defendant admitted the official

Baker v. State.

capacity in which he served the county. Mr. L. J. Butcher, deputy state fire marshal, went to North Platte immediately after the fire to make an investigation. This officer testified that defendant told him that he had been the deputy county treasurer for more than four years last past. And the record verifies Mr. Butcher's statement. Beginning with December, 1919, there are many delinquent tax notification cards in evidence which bear this printed inscription: " Office of the County Treasurer of Lincoln county, Nebraska. S. M. Souder, Treas. E. C. Baker, Deputy." And on redemption notices and letter-heads and personal tax notices appear the printed names of Souder and Baker as treasurer and deputy, respectively. We do not think defendant's contention can be upheld, in view of the law and of his admissions and of the facts.

To support his argument in respect of nonliability, defendant cites *Moore v. State,* 53 Neb. 831. This case is not in point. It appears that Moore was the auditor of public accounts and, as such state officer, he was charged with the embezzlement of certain public moneys which, by some means, came into his hands. In an exhaustive opinion by Judge Irvine, in which a judgment of conviction was reversed, the writer at page 848 concludes with this observation: " To hold that the auditor is a person charged with the collection, receipt, safe-keeping, transfer, or disbursement of the public money, when the law expressly forbids him to receive it or handle it, would certainly go beyond the plain import of the words of the statute, and create a crime by construction in the plainest violation of the law." It is obvious that the *Moore* case does not support defendant's argument.

Defendant also cites *State v. Meyers,* 56 Ohio St. 340. In this case Meyers, a deputy county treasurer, was charged with embezzling $100 of public money belonging to the city of Canton which came into his possession, as alleged, by virtue of his office and in the discharge of his duties. In respect of the statute under which the prosecution was

brought the court held Meyers immune from prosecution thereunder and said:

"The law goes no further than to authorize the county treasurer, at his pleasure, to appoint one or more deputies, who hold their appointment only during the pleasure of the principal, who is answerable for the proceedings and misconduct of the deputy, and may, for his own protection, take a bond with sureties for the faithful performance of the services required of the deputy; but the latter takes no oath of office, nor gives bond to any public authority, and is in no sense a public officer, but a mere agent of the treasurer."

In view of the wording of the Ohio statute, and of the meaning placed thereon by the supreme court of that state, it clearly appears that the *Meyers* case is not in point.

In Iowa the statute which provides for the punishment of public officers for the embezzlement of public money is substantially the same as the Nebraska statute. There is, however, a distinction between the Iowa statute and our statute in that the former contains a provision under which a public officer may be prosecuted, as for embezzlement, for such public money as may come into his hands and is, by such officer, ".unaccounted for." *State v. Brandt,* 41 Ia. 593. In this case Brandt, a deputy state treasurer who was prosecuted for embezzlement, contended that he was not a state officer within the meaning of the act as it then existed, and was therefore not indictable thereunder. But the court expressly held that a deputy state treasurer was a state officer and that the law embraces an officer *de facto* as well as one *de jure.* Brandt's conviction however, was reversed, but on another ground, namely, that the indictment against him did not charge that the public money that came into his hands was "unaccounted for," and that this averment in the indictment, under the facts, was required under section 4243 of the Revision under which the indictment was drawn.

An accepted authority says this in respect of the status of deputies generally:

" Whether deputies appointed by public officers are to be regarded as public officers themselves depends upon the circumstances and method of their appointment. Where such appointment is provided for by law, and *a fortiori* where it is required by law, which fixed the powers and duties of such deputies, and where such deputies are required to take the oath of office and to give bonds for the performance of their duties, the deputies are usually regarded as public officers. * * * But where the deputy is appointed merely at the will and pleasure of his principal to serve some purpose of the latter, he is not a public officer but a mere servant or agent. So a special deputy employed only in a particular case is not a public officer." Mechem, Public Officers, sec. 38. *McMillin v. Emery*, 59 Utah, 553.

In *Norton v. Shelby County*, 118 U. S. 425, this was said by Mr. Justice Field:

" Where an office exists under the law, it matters not how the appointment of the incumbent is made, so far as the validity of his acts are concerned. It is enough that he is clothed with the insignia of the office, and exercises its powers and functions."

" The doctrine which gives validity to acts of officers *de facto*, whatever defects there may be in the legality of their appointment or election, is founded upon considerations of policy and necessity, for the protection of the public and individuals whose interests may be affected thereby. Offices are created for the benefit of the public, and private parties are not permitted to inquire into the title of persons clothed with the evidence of such offices and in apparent possession of their powers and functions."

In view of the statutes and of the authorities, and for the reasons appearing herein, we conclude that defendant, prior to the time when he admits that he took the oath of office and filed the statutory bond, was the *de facto* deputy county treasurer of Lincoln county, and as such was a county officer, and was therefore subject to prosecution under section 9634, the same as one taking the oath and giving a bond.

Defendant moved for a change of venue from Lincoln county on the alleged ground that public sentiment was so adverse to him that a fair and impartial jury could not be obtained therein. The court overruled his motion and he contends that in this the court erred.

True, the burning of the courthouse, which was charged in the newspaper exhibits to have been of incendiary origin, naturally created a great deal of discussion in the county. An organization, composed of persons from all parts of the county, was formed to inquire into the facts pertaining to the alleged incendiarism and also to investigate the alleged unlawful expenditure of a large sum of public money in connection with the erection of a new courthouse, then in the course of construction, and also to investigate the facts in respect of the public business of the county generally, and in respect of alleged embezzlement of public money.

In this connection it may be noted that much evidence, mostly in the form of affidavits, in addition to that of defendant, and also many newspaper clippings, mostly from county papers, are in the record, and in support of defendant's motion, and these were introduced to show the existence of a general hostility to defendant which was alleged to exist in Lincoln county. But the state filed many counter affidavits which tended to prove the contrary. The contrary also fairly appears from the *voir dire* examination of the jurors at the trial which occurred long after the events referred to in the exhibits. The record before us, altogether aside from the transcript and the exhibits, consists of more than 2,000 pages. We cannot of course reproduce the evidence on this point in the space that should be allotted to this opinion. But from an examination of the affidavits introduced by defendant, and the counter affidavits introduced by the state, we conclude that, as hereinafter pointed out, this assignment of alleged error is not tenable. It may be observed that the state alleges, and it is not denied by defendant, that only two indictments were returned against him, while approximately 140 indictments were

Baker v. State.

returned against Mr. Souder, and, in the excerpts from the newspapers, and in the affidavits, it appears that the references to defendant are negligible as compared with the references to his principal. And, after defendant was informed against, approximately six months elapsed before his trial came on. During this interval, he was at liberty under bond. So that, it is reasonable to believe, there was time for such adverse public sentiment, as may once have existed, to subside so far as such sentiment might have prejudicially affected defendant in the selection of a jury.

Defendant also assigns as reversible error the fact that a large part of the counter affidavits which were filed by the state, in resistance of defendant's motion for a change of venue, were originally verified by the respective affiants before notaries public who were counsel for the state. When the court's attention was directed to this fact many of the affidavits, so verified, were permitted to be refiled after being reverified before a notary public against whom this statutory inhibition did not exist. Comp. St. 1922, secs. 8633, 8879, 8884; *Horkey v. Kendall*, 53 Neb 522. It will not be presumed that the court would, or that it did, consider affidavits which were verified by counsel for the state, and particularly where, as in the present case, the counter affidavits which were subsequently verified, before competent authority, were sufficient in substance to overcome those filed by defendant.

Defendant admits that on the *voir dire* examination the prospective jurors, in substance, stated that if accepted as jurors they could hear the evidence and render a verdict the same as though they had not before heard anything about the case. The argument is that, regardless of the fact, such qualification was practically extorted from the proposed jurors because of adverse public sentiment. Surely it is not to be presumed that the multitude of citizens who were brought before the court and subjected to a searching *voir dire* examination so stultified themselves! Anyhow, in view of defendant's admission, a reviewable assignment of alleged error is not presented to us on this feature of the case.

It has been often said that an application for a change of venue is addressed to the sound judicial discretion of the court. Even where the existence of prejudice is shown to have once existed, a change of venue will not be granted where it appears that the prejudice has subsided and a fair and impartial jury can be obtained. 16 C. J. 203, sec. 306, .206, sec. 308. And it has come to be elementary that a motion for a change of venue, in a criminal prosecution, is addressed to the sound judicial discretion of the court, and in the absence of an abuse of such discretion in the court's ruling, the verdict will not be disturbed. *Goldsberry v. State,* 66 Neb. 312; *Simmons v. State,* 111 Neb. 644. Prejudicial error has not been shown in this assignment of alleged error.

We have examined the instructions given by the court, to which defendant excepts, and also the instructions tendered by defendant, and refused, and upon which several rulings defendant seeks to have the verdict vacated and the judgment reversed. But we do not find that prejudicial error appears in the rulings of the court thereon. We deem it sufficient to say that the instructions, as a whole, which were given by the court of its own motion, when considered together, seem fairly to reflect the law applicable to the facts. It also appears that in the given instructions the substance of such of defendant's requested instructions, as properly state the law, are sufficiently incorporated.

Defendant contends that the court erred in appointing Mr. William E. Shuman as counsel to assist the county attorney in the prosecution, on the ground that he had taken part in developing certain facts upon which the prosecution is in part based. But we are unable to find anything in the record growing out of such appointment which seems prejudicially to affect the substantial rights of the defendant and which should cause a vacation of the judgment. This appointment was requested by the county attorney, as provided by statute, and was addressed to the sound judicial discretion of the trial court, Comp. St. 1922, sec. 4916. An

abuse of such discretion does not appear and, in view of the record before us, we find that prejudicial error cannot be based thereon. Exceptions are also taken to the overruling of defendant's plea in abatement, upon which evidence was submitted to the court, and to the overruling by the court of defendant's demurrer to the information, but reversible error does not appear in the ruling of the court in respect of these assignments.

Reversible error has not been shown. The judgment is therefore

AFFIRMED.

Note—Criminal Law, 16 C. J. secs. 306, 308, 322, 2291, 2292; District and Prosecuting Attorneys, 18 C. J. sec. 81; Embezzlement, 20 C. J. sec. 46—Officers, 29 Cyc. pp. 1392, 1393. ·