## RAMSAY MOTOR CO., v. WILSON

(No. 1836; March 20, 1934; 30 Pac. (2d) 482)

The cause was submitted for the appellant on the brief of *D. R. Higley* of Rawlins.

The cause was submitted for respondent on the brief of *J. R. Armstrong* of Rawlins.

58

RINER, Justice.

This is a proceeding by direct appeal to review an order of the District Court of Carbon County sustaining a motion of the Ramsay Motor Company, as plaintiff below, respondent here, for leave to amend an attachment affidavit, and denying a motion of J. D. Wilson, as defendant below, appellant in this court, to quash and vacate the attachment phase of the action presently to be mentioned. The parties will generally be referred to hereinafter as they appeared in the trial court, or by their respective names.

On March 10, 1933, the plaintiff brought suit, in the district court aforesaid, to recover from the defendant, the sum of $242.10 on an account. With its petition was filed a precipe for an attachment writ and "affidavit for an attachment" and the usual bond required in such cases. Writ and summons were issued forthwith and, the same day, the sheriff thereunder seized a Chrysler automobile belonging to the defendant, which was duly appraised as required by law. On the 11th day of March, 1933, the defendant filed a bond conditioned to "perform the judgment of the court," pursuant to the provisions of section 89-3325, Wyo. Rev. St. 1931. On March 25th following, the defendant filed his motion to quash and vacate the attachment proceedings already mentioned, upon the ground that the affidavit aforesaid was fatally defective in that it was sworn to before a notary public who was the attorney representing the plaintif in the cause. This motion was supported by the affidavit of counsel for defendant for the purpose of establishing the truth of the ground thus alleged, and, so far as that matter is concerned, the fact is conceded herein.

April 4, 1933, the plaintiff by motion requested the court for an order permitting it to amend the attachment affidavit by allowing its president to swear to the said affiidavit before another notary public. The several motions of the parties were, in due course, heard by the district court, and on April 26th, following, the order now attacked was entered, disposing of them as herein above recited.

The Ramsay Motor Company has filed in this court a motion to dismiss the appeal taken in the cause, on the ground, in substance, that section 89-4906, Wyo. Rev. St. 1931, states what documents shall appear in the record on appeal, and that an attachment affidavit

is not there enumerated as one of such documents; and that, as the appeal is predicated upon an alleged error appearing in this affidavit, the order is not subject to review, under the State law governing direct appeals to this court. The point is argued, in support of this motion, that the only method by which a review of the order in question could be obtained was by proceedings in error.

The statute thus relied upon is to the following effect:

"In civil causes appealed to the supreme court under the provisions of this article, the clerk of the district court shall prepare a record on the appeal which shall consist of the original or certified copies of the pleadings, motions, demurrers, instructions given and refused, verdict and findings, certified copies of the journal entries, including the entry of the judgment or order appealed from, and the notice of the appeal in the cause, securely attached together in their chronological order, and if a transcript of the testimony is prepared and filed, and is brought up on the appeal, the transcript with the exhibits and documentary evidence contained therein or attached thereto as a part thereof, shall also form a part of the record on appeal. When so prepared, the whole of such record shall be paged and numbered consecutively, and shall be certified to by the clerk of the district court as true and correct and filed in his office; and the specifications of error, when filed, shall be authenticated by the certificate of said clerk and attached to the record by him and shall thereupon become a part of the record."

It is obvious that the plaintiff relies upon the well-known rule of statutory construction often applied by courts, in determining the effect to be given the language of legislative enactments, viz., "expressio unius est exclusio alterius," i. e., the expression of one thing is the exclusion of another. However, concerning the use of that maxim, the authorities have appropriately

pointed out that it should be employed advisedly, and that it does not have universal application.

Concerning it, 59 C. J. 984, 985, upon authority of an extended list of cases, says "The maxim should be applied only as a means of discovering the legislative intent, and should never be permitted to defeat the plainly indicated purpose of the legislature." In Colquhoun v. Brooks, Law Rep. (1887), 19 Q. B. D. 400-406, Judge Wills remarked:

"I may observe that the method of construction summarised in the maxim 'Expressio unius exclusio alterius' is one that certainly requires to be watched. Perhaps few so-called rules of interpretation have been more frequently misapplied and stretched beyond their due limits. The failure to make the 'expressio' complete very often arises from accident, very often from the fact that it never struck the draftsman that the thing supposed to be excluded needed specific mention of any kind."

On review of this case, Law Rep. (1888), 21 Q. B. D. 52-65, in the Court of Appeals, the following language was used by Lopes, L. J.:

"The maxim 'Expressio unius, exclusio alterius,' has been pressed upon us. I agree with what is said in the Court below by Wills, J., about this maxim. It is often a valuable servant, but a dangerous master to follow in the construction of statutes or documents. The exclusio is often the result of inadvertence or accident, and the maxim ought not to be applied, when its application, having regard to the subject-matter to which it is to be applied, leads to inconsistency or injustice."

Discussing the effect to be given this maxim, in City of St. Louis v. Baskowitz, 273 Mo. 543, 201 S. W. 870, 873, the court said:

"It is the position of counsel for appellant that since this charter provision has in express terms granted to the city of St. Louis the power to license and tax certain enumerated occupations and business, its power

is thereby limited, and it cannot tax any other occupation or business, and that the use of the general language found in the charter, which we have italicized, following the particular powers enumerated, does not extend its power to license any other occupation. That is a general canon of statutory construction, as shown by the authorities cited, but it has its well-known exceptions, the same as most other general rules, and one of them is that where the language of the statute upon its face clearly shows a contrary intention, in such a case the intention of the lawmaker must prevail over the bare legal inference which is to be drawn from the enumeration of the specific powers granted. In other words, the maxim 'Expressio unius est exclusio alterius' has no application where the statute upon its face clearly conveys a contrary intention of the Legislature."

The Supreme Judicial Court of Massachusetts, in Simmons v. Suffolk County, 230 Mass. 236, 119 N. E. 751, very well said:

"The maxim of statutory construction that the expression of one thing is the exclusion of another, invoked by the defendant, is not conclusive of legislative intent, but is to be considered with regard to the object sought to be obtained by the entire legislation of which the subject-matter to which it relates is but a part."

In City of New York v. Davis, 7 F. (2d) 566, 575, Circuit Judge Rogers, speaking for the United States Circuit Court of Appeals, for the Second Circuit, outlined the views entertained by the court, concerning the maxim, in this wise:

"We do not lose sight of the maxim 'Expressio unius exclusio alterius.' But, while the maxim is a sensible and useful one, it is not of universal application, and when to apply it would be to defeat the accomplishment of the manifest purpose of the act, and to prevent the attainment of the end for which the act was passed, we certainly must decline to be governed by it. In United States v. Barnes, 222 U. S. 513, 519, 32 S. Ct.

117, 118 (56 L. Ed. 291), the Supreme Court said of this maxim: 'The maxim invoked expresses a rule of construction, not of substantive law, and serves only as an aid in discovering the legislative intent, when that is not otherwise manifest. In such instances, it is of deciding importance; in others, not.' "

See also Chicago & N. W. Ry. Co. v. Hall, 46 Wyo. 380, 26 P. (2d) 1071.

We need not multiply additional citations along this line further inasmuch as the statements given in the excerpts above set forth are clearly grounded in sound reason.

What, then, was the purpose of the legislative enactment of this state which created the direct appeal method of appellate procedure relative to this court? It seems to us that this purpose is made manifest beyond the peradventure of a doubt by the opening and closing sections of that act. They read,

Section 89-4901:

"No proceedings in error shall be necessary to present for review in the supreme court any judgment or order heretofore removable thereto by such proceedings in error, but any such judgment or order may be therein reviewed by direct appeal, and the words 'proceedings in error,' where used in the laws of this state, shall be held to mean and include 'appeal'."

And section 89-4915:

"The provisions of this article are intended to provide for a direct appeal to the supreme court of this state from the district courts, and as a separate and independent method of reviewing civil and criminal causes in the supreme court, in addition to the provisions of law of this state now in existence for reviewing such causes in the supreme court on proceedings in error, and nothing herein contained shall be construed as modifying, changing, amending, altering, or repealing any of the provisions of the existing laws of this state relating to proceedings in error."

If we should construe section 89-4906, *supra,* as plaintiff urges upon us, we would be compelled to utterly ignore the plain language of the two sections last above quoted, with the result, unquestionably, of preventing the "attainment of the end for which the act was passed." The phraseology employed by the lawmakers is emphatic—"*No* proceedings in error shall be necessary" to obtain a review in this court of "*any* judgment or order heretofore removable thereto by such proceedings in error,"—and we are unable to see how it may legally be disregarded.

Viewing all the sections of the direct appeal act quoted above, together as, of course, they must be, we think it plain that the list given in section 89-4906, of what shall constitute the record on appeal, is not a hard and fast one nor an exclusive one. It purports to give, as it seems to us, what would be the ordinary and usual component parts of the record in a case, and such as would be ordinarily necessary to exhibit the error or errors complained of. If other papers in the case than those enumerated, will shed light upon the error asserted, concerning the order or judgment sought to be reviewed, they may properly be included. A moment's reflection will readily establish that the provisions of section 89-4906 are not inflexible. For example, in a case where many and extended motions have been filed and ruled upon in the district court, long and elaborate instructions necessarily given and refused by the trial judge, intricate and lengthy findings of fact and conclusions of law thereon filed, must all these be included in making up a record on appeal when the only question which counsel for the appellant desires to have reviewed is, whether the petition in the case states a cause of action? We are inclined to think not. In the construction of statutes, as said in II Lewis' Sutherland Statutory Construction (2nd Ed.) 910, § 488:

"Considerations of what is reasonable, convenient, or causes hardship and injustice, have a potent influence in many cases. It is always assumed that the legislature aims to promote convenience, to enact only what is reasonable and just."

We cannot believe that it was the intention of the legislature, by the direct appeal act, to impose the expense upon litigants of preparing a record, the major part of which would be utterly useless.

It may additionally be observed that the conclusion we have reached on the point now under examination has already been impliedly sanctioned, over a period of many years, by the previous decisions of this court in workmen's compensation cases. In those cases, many papers have appeared in their records which are certainly not enumerated, in section 89-4906, supra, but which have materially aided in the determination of the error or errors charged against the awards made by the trial court.

Recalling that, in the First Nat. Bank of Sundance v. Moorcroft Ranch Co., 5 Wyo. 50, 36 Pac. 821, 822, this court has stated that, "The order dissolving or sustaining an attachment, when made by a court, is undoubtedly a final order and may be reviewed on proceedings in error instituted before judgment," our disposition of this matter must necessarily be that the motion to dismiss the appeal will be denied. The appealable character of the order has, however, not been presented and necessarily we have not considered the point.

Passing to an examination of the merits of the appeal, the questions presented thereby are, (1) whether the attachment affidavit, as originally filed by the plaintiff, was wholly void or merely voidable, and (2) whether the trial court erred in allowing the amendment to be made as above described, and in denying

defendant's motion to quash and vacate the attachment proceedings. Defendant contends that the affidavit, sworn to as it was, before a notary public who was plaintiff's attorney in the case, was wholly void and an utter nullity, and, being so, it was incapable of amendment, with consequent error in the district court's ruling on his motion. These suggested questions may properly be considered together.

The defendant relies upon that part of section 89-1727, Wyo. Rev. St. 1931, which provides, "An affidavit may be made in or out of this state, before any person authorized to take depositions, and must be signed by the person who makes it." According to section 89-1805, Wyo. Rev. St. 1931, it is enacted that:

"Depositions may be taken in this state before a judge or clerk of the supreme court, a judge or clerk of the district court, justice of the peace, notary public, mayor or chief magistrate of a municipal corporation, or any other person authorized by law to administer oaths, or any person empowered by a special commission."

These two sections, standing alone, would indicate that a notary public is empowered generally to administer the oath to a person making an affidavit. But defendant, in support of his contention, directs our notice to the provisions of section 89-1807, which reads:

"The officer before whom depositions are taken, must not be a relative or attorney or either party, or otherwise interested in the event of the action or proceeding."

Laws phrased quite like the three statutory provisions last above quoted appear in the legislation of the States of Kansas, Nebraska, Oklahoma, and Ohio, and have received consideration in the courts of those

states. Their decisions will materially aid in reaching a proper result in this case.

Swearingen v. Howser, 37 Kan. 126, 14 Pac. 436, 437, was a case which resembles in many respects the one at bar. There, an attachment writ was procured on an affidavit sworn to before one of the attorneys for the plaintiff. A motion to dissolve the attachment because of this alleged insufficiency of the affidavit was filed and presented to the court. Upon the hearing of the motion, the plaintiff asked leave to amend the affidavit by swearing to it before some officer duly authorized to administer oaths, other than his attorney in the case. The leave thus sought was refused and the attachment ordered dissolved. On error, the Supreme Court of Kansas reversed the district court's ruling, and, after mentioning the several statutory provisions to which we have already referred, said:

"Hence, it will be seen that notaries public have the general power to take depositions or affidavits in all cases, and without any exception or limitation. There are cases, however, where it would be improper or irregular for a notary public to exercise such power, as where the deposition or affidavit is to be used in some suit or proceeding where the notary public is a relative or an attorney of either party to such suit or proceeding, or in some manner interested in the event of the suit or proceeding; and in such cases, he should not exercise the power to take the deposition, or the affidavit. If he should do so, however, it would not be acting without power, but would be an irregular and wrongful exercise of power. Where any officer or agent acts with power, but only irregularly and wrongfully, his acts are not void, but at most voidable. * * *

"In a case like the present, where the affidavit was originally sworn to before an attorney of one of the parties, no harm can be done by giving leave to amend the affidavit by having it sworn to before some other person; certainly not if the facts stated in the affidavit are such that no person will again swear to them. If

some person will again swear to them, the opposing party may show if he can, that the alleged facts are not true."

This decision has been consistently followed in subsequent cases in the jurisdiction last cited. See Board of Com'rs of Cheyenne County v. Walter, 83 Kan. 743, 112 Pac. 599, where it was held that an affidavit, of a party who applied to have a judgment opened up so that he might be let in to defend, verified before his attorney, was irregular and voidable but was not void, and, hence, it could be amended by a proper verification, and when the amended affidavit was filed it would relate back to the original affidavit. Of similar purport is the case of Harris v. Burbery, 85 Kan. 201, 116 Pac. 206, where, referring to certain other of its decisions, the court remarked:

"The other point which was not determined by these cases is whether the Aherne judgment is absolutely void because the affidavit for service by publication was sworn to before one Edward Dill who appears to have been an attorney for plaintiff at the time the judgment was rendered. If he were the attorney for the party making the affidavit at the time it was made the judgment might be voidable, but would not be void. Swearingen v. Howser, 37 Kan. 126, 14 Pac. 436."

In Nebraska, the questions we are considering were involved in the case of Horkey v. Kendall, 53 Neb. 522, 73 N. W. 953, 955, 68 Am. St. Rep. 623. It was there held that an affidavit to procure an attachment, sworn to before a notary, who was also the attorney for the plaintiff, was not a nullity but a mere irregularity which could not be attacked collaterally. In the course of the opinion in that case, this was said:

"The provisions of our Code as to the competency of officers administering oaths to affiants are substantially declaratory of the common law, and both at the common law and under statutes like ours it is very generally held that the making of an affidavit before

an attorney in the case, if he be an officer generally authorized to take affidavits, is an irregularity merely, which must be attacked at once by motion, or it will be waived; and that such an affidavit is not a nullity. (Gilmore v. Hempstead, 4 How. Pr. (N. Y.) 153; Smith v. Ponath, 17 Mo. App. 262; Linck v. City of Litchfield, 141 Ill. 469, 31 N. E. 123; Swearingen v. Howser, 37 Kan. 126, 14 Pac. 436; Haward v. Nalder, Barnes (Eng.) 60.) * * * As pointed out in *Swearingen v. Howser, supra,* there is a clear distinction between the administration of an oath by one not authorized to administer oaths, and the administration of an oath by one generally authorized, but forbidden to do so in a particular case. In the first case no power exists, and the act is a nullity; in the other the power exists, but it has been wrongfully exercised."

Following this decision, we find the same court, in Dorby v. Western Mfg. Co., 57 Neb. 228, 77 N. W. 656, using the following language:

"The questions presented in this case arise upon a motion to discharge an attachment, and upon an order directing a sale of the attached property, which was entered contemporaneously with the entry of final judgment. It was held in Horkey v. Kendall, 53 Neb. 522, 73 N. W. 953, that a notary public who is the attorney of one of the parties to an action is not permitted to take the affidavit of his client for the purpose of procuring an attachment; but it was also held that an affidavit of the nature and taken as just indicated was not a mere nullity. Under these conditions, it was proper to permit the amendment of the affidavit indicated, as well as of the sheriff's return, for the objections to these amendments were entirely dependent upon the assumption that the affidavit in question was absolutely void."

So, in Baker v. State, 112 Neb. 654, 200 N. W. 876, it was held that, where a defendant moved for a change of venue in a prosecution for a felony, and it appeared that the counter affidavits resisting defendant's motion had been verified by a notary public who was an attorney of record for the State, it was not reversible error

for the court to permit such affidavits to be withdrawn from the files for reverification before competent authority and be thereafter refiled. See also E. R. Godfrey and Sons Co. v. Citizens Nat. Bank of Norfolk, 64 Neb. 477, 90 N. W. 239.

The court of last resort in Oklahoma has adopted like conclusions with those of Kansas and Nebraska on this matter. In Carolina v. Montgomery, 74 Okl. 121, 177 Pac. 612, it was said:

"It is further insisted by the defendant that the petition of the guardian asking authority to sell real estate, having been sworn to before the attorney for the guardian, is void for that reason, and with this contention we cannot agree. This is a collateral attack upon a judgment of a court regular upon its face. The said petition having been sworn to before a notary, who was the attorney of the guardian, was only voidable, and therefore the contention of the plaintiff that the same was void is without force.

"In Shanholtzer v. Thompson et al., 24 Okl. 198, 103 Pac. 595, 138 Am. St. Rep. 877, it is held:

" 'An affidavit filed in a case, executed before a notary public who is attorney of record appearing for the party offering the same, is voidable, and on being assailed for this reason, in the absence of a request for amendment, where such a course is permissible, should be held void'."

See also the comparatively recent case of Oliver v. Kelly, 162 Okl. 55, 18 P. (2d) 1064, in which a rehearing was denied, Feb. 14, 1933.

Waples on Attachment and Garnishment (2d Ed.) § 109, says, relative to the matter of making oath to the affidavit in attachment, citing Swearingen v. Howser, supra, that, "The plaintiff's lawyer should not administer the oath in his capacity as notary—the affidavit would be voidable."

Discussing the jurat of the affidavit in attachment proceedings, 2 R. C. L. 836, § 44, uses this language:

"Under some statutes, an attorney for either party is prohibited from taking, as a notary public, the affidavit whereby an attachment is obtained. But both at the common law and under statutes it is very generally held that the making of an affidavit before an attorney in the case, if he is an officer generally authorized to take affidavits, is an irregularity merely, which must be attacked at once by motion, or it will be waived; and that an affidavit so made is not a nullity."

We are inclined to agree with the reasoning of the Kansas court on the questions presented here, as appears in the opinion of Judge Horton cited above. Those views have also been adopted in two of the other states mentioned above as possessing similar legislation, as already indicated. They appeal to us as sound and tending to promote just results in attachment cases. When the provisions of section 89-1063, Wyo. Rev. St. 1931, vesting the trial court with power to allow amendments to be made in furtherance of justice, are recalled, we have no doubt that, in the case at bar, the District Court of Carbon County possessed the authority to allow the attachment affidavit to be amended, as was done, and thereupon to deny the defendant's motion to quash. See Foreman v. Carter, 9 Kan. 674-681, et seq., opinion by Brewer, J. The affidavit was not void or a nullity but merely voidable, the notary public's general power to administer oaths being, in the specific instance, merely irregularly exercised.

Certain cases from the State of Ohio have been pressed upon our attention by the defendant, notably Ward v. Ward, 20 Oh. Cir. Ct. 136, and Leavitt & Milroy Co. v. Rosenberg Bros. & Co., 83 Oh. St. 230, 93 N. E. 904. These cases hold on the ground of public policy apparently that, under such circumstances as

we have before us in the case at bar, the attachment affidavit is a nullity and may not be amended. They were decided after the language of the statutes of our State, cited above, was adopted from the Ohio code, and, as counsel for the defendant frankly concedes, are persuasive only. As already intimated, we think the better rule is that which regards the attachment affidavit, when sworn to before an attorney of one of the parties, although defective yet voidable only, not void, and capable of amendment.

What has been said, being sufficient, as we think, to dispose of this appeal, the order of the district court, of which complaint has been made, should be affirmed.

*Affirmed.*

KIMBALL, Ch. J., and BLUME, J., concur.