Fred McGUIRE and Mickey McGuire, Appellants (Contestees),

Board of County Commissioners of Platte County, Wyoming (Contestee),

v.

Dan McGUIRE, Loretta McGuire, Eldon Allison and Elaine Allison, Appellees (Contestants),

Two Bar Ranch Company, Appellee (Contestee).

No. 5176.

Supreme Court of Wyoming.

March 21, 1980.

---

Arthur Kline, of Kline & Swainson, Cheyenne, signed the brief and appeared in oral argument for appellants.

Sky D. Phifer, of Phifer & Phifer, Wheatland, signed the brief and Fred W. Phifer, Wheatland, appeared in oral argument for appellees McGuire and Allison.

John A. Sundahl, of Godfrey & Sundahl, Cheyenne, signed the brief and appeared in oral argument for Two Bar Ranch Company.

John D. Troughton, Atty. Gen., and Mary B. Guthrie, Asst. Atty. Gen., amicus curiae for the State of Wyoming.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

This appeal deals with an application for a private road to a parcel of landlocked property. The application was filed pursuant to §§ 24-9-101 et seq., W.S.1977.[1]

The contestants-appellees, Dan and Loretta McGuire, filed their petition naming

---

1. The petition was filed on July 12, 1976, before the Platte County Commissioners. The petition cited § 24-92, W.S.1957. The statute is now found at § 24-9-101:

"Any person whose land shall be so situated that it has no outlet to, nor connection with a public road, may make application in writing to the board of county commissioners

the contestees-appellants, Fred and Mickey McGuire, as well as Two Bar Ranch Company.[2] The appellees wanted a private road over the lands of either the appellants or Two Bar Ranch. A hearing was had before the Platte County Commissioners on June 6, 1978.[3] An additional hearing was conducted on July 12, 1978. In addition to the testimony heard by the county commissioners at these proceedings, there were a significant number of exhibits and other items of evidence placed in the record. At those hearings, Eldon and Elaine Allison were added as parties because they had purchased the 80 acres in question from the appellees[4] and were the record owners. Thus, the Allisons are also appellees. Our future references to appellees thus include both the McGuires and the Allisons.

On September 6, 1978, the county commissioners issued findings of fact, conclusions of law, and an order which dismissed the appellees' application for a private road. The commissioners' dismissal was based on several grounds:

of his county at a regular session, for a private road leading from his premises to some convenient public road. Said applicant shall give at least thirty (30) days notice in writing to the owner or resident agent or occupant of all lands over which such private road is applied for, of the time of making such application to such board. If the owner of such land be a nonresident, and there be no resident agent upon which personal service can be had, then *such notice may be published in some newspaper published in the county for three (3) weeks, the last publication shall be at least thirty (30) days before the hearing of said application, at which time all parties interested may appear and be heard by said board as to the necessity of said road, and all matters pertaining thereto. Upon the hearing of said application, whether the owner or others interested appear or not, if the said board shall find that the applicant has complied with the law, and that such private road is necessary, said board shall appoint three (3) disinterested freeholders and electors of the county, as viewers and appraisers, and shall cause an order to be issued directing them to meet on a day named in such order on the proposed road, and view and locate a private road according to the application therefor, and to assess damages to be sustained thereby, and if for any reason such viewers and appraisers are unable to meet at the time set by the board to view said proposed road, they may fix some other date,* but shall be required to give notice in writing to the owner or resident agent or occupant of said lands over which said road is proposed to be laid of the time and place where such viewers will meet, at least ten (10) days before viewing such road, at which time and place all persons interested may appear and be heard by said viewers. Before entering upon their duties such viewers shall take and subscribe to an oath that they will faithfully and impartially perform their duties under their said appointment as viewers and appraisers. *Such viewers shall then proceed to locate and mark out a private road in accordance with said application, not exceeding thirty (30) feet in width from a certain point on the premises of the applicant to some certain point on the public road, so as to do the least possible damage to the lands through which such private road is located, and they shall also at the same time assess the damages sustained by the owner or owners over which such road is to be established* and make full and true returns, with a plat of such road to the board of county commissioners." (Emphasis added.)

2. The Two Bar Ranch Company has rested its case throughout this litigation on the theory that any road from the 80-acre parcel which crossed Two Bar lands would also have to cross lands owned by the State of Wyoming. A statute, § 36–9–118, W.S.1977, and Manual of Regulations and Instructions for filing Applications for Rights of Way, Ch. 1, §§ 5(c) and 6, (1974), do not permit private roads across State lands. In this opinion we make no decision regarding these statutes and rules. It is an appellee in the case, but we shall refer to it as Two Bar Ranch for the sake of clarity.

3. The inordinate delay between the initiation of the proceedings and hearing is "explained" in the record and briefs as being the result of a quiet title action to determine who really owned the 80-landlocked acres. The record also suggests this proceeding was made necessary because an intra-family dispute was raging.

4. As will be evident later in the statement of facts, the Allisons in turn entered into a contract with the Flynns to sell the 80 acres to them. It was a provision of this later contract that if a road could not be obtained providing access to the property, the appellees would be required to take the property back from the Allisons and refund any moneys paid down on the property. Out of these arrangements grew the contention that the appellees-McGuires were not the record owners and were not entitled to relief under the statute.

"1. Dan McGuire and Loretta McGuire were, prior to August 13, 1975, the owners of 80 acres of land commonly described as the NW¼ SW¼ and SW¼ NW¼ of Section 10, T23N, R69W of the 6th P.M., Platte County, Wyoming.

"2. Subsequent to the filing of this petition, the contestants sold the described property on August 13, 1975, to Eldon Allison and Elaine Allison, husband and wife, under a Contract of Sale and Guarantee Agreement. Dan McGuire and Loretta McGuire are not the legal owners of the property in question, having conveyed the same by Warranty Deed to Eldon Allison and Elaine Allison, husband and wife, by Warranty Deed recorded on October 25, 1976, in Book 194 at Pages 163 and 164, Platte County records.

"3. Subsequently, on May 13, 1976, Eldon Allison and Elaine Allison resold the property under a Contract of Sale to Raymond Flynn and Darlene Flynn, husband and wife. Dan McGuire and Loretta McGuire were not parties to the said Contract of Sale, although they approved the terms thereof. This sale was subject to obtaining a road right of way to said premises.

"4. Eldon Allison and Elaine Allison are the holders of legal title to the 80 acres. The owners of said 80 acres, subject to the terms of the Contract of Sale, are Raymond Flynn and Darlene Flynn, who paid the taxes thereon for the year 1977.

"5. At the June 6, 1978, hearing, Eldon Allison and Elaine Allison were joined as contestants and applicants. At no time were Raymond Flynn or Darlene Flynn joined as applicants or contestants.

\*      \*      \*      \*      \*      \*

"13. There has been no evidence presented by the applicants as to the purposes for which the road is desired, future type or extent of use of any proposed road, or of the proposed use of the 80 acres. Accordingly, the Board of County Commissioners is unable to determine the impact which any proposed road would have upon adjoining landowners which the road might cross. The only interest of the Contestants-Applicants in obtaining a private road is financial, which interest the Board finds to be an inadequate basis for granting the application.

"14. The 80 acres in question are not presently used by the McGuires, the Allisons, or the Flynns. Use of such property has been limited to hunting and other minor activities upon the property.

"15. There are no fences surrounding the 80 acres, although there is a boundary fence on the south side of the property. There are no improvements except for a homestead cabin ruin. The 80 acres are situated in extremely mountains [sic] property.

"16. Section 3 of the Unlawful Enclosure of Public Lands Act (43 U.S.C. § 1063 prevents obstruction of free passage over public lands of the United States of America.

"17. No evidence as to the necessity or need for such road has been presented in this proceeding.

"18. The Board of County Commissioners finds that the private road is not necessary, as required by Section 24–9–101, Wyoming Statutes 1977, for the reason that the applicants presently have access to the property and such access has not been denied. The adjoining landowners over whose lands the requested private road may be located will suffer more from the granting of the application than will the applicants from its denial.

"19. Access to the property has never been denied, and access by the McGuires has traditionally been from the west, north or the east of the property.

"20. For in excess of 40 years, there has been an established road to the north of the property on the Muleshoe Flats, which branch off of County Road No. 271. Said road is across BLM lands, and has been used by members of the public during that time. The public lands over which such roads pass have not been reserved for any public use.

"21. 43 U.S.C. Section 932 provides: 'The right of way for the constructing of highways over public lands, not reserved for public uses, is hereby granted.'

"Although the statute was repealed effective October 21, 1976, the two roads which branch off the County Road to the north across Muleshoe Flats were previously laid out and used by the public sufficient to constitute acceptance and dedication of the offer contained in that statute, and therefore an established road is deemed to exist across the public lands of the United States.

*  *  *  *  *  *"

The commissioners then concluded:

## "CONCLUSIONS OF LAW

"1. The application herein is filed pursuant to Section 24-9-101, Wyoming Statutes, 1977.

"2. The proposed private road is unnecessary.

"3. No viewers or appraisers should be appointed by this Board to determine damages to the property of the contestees caused by location of a road over their property until contestants have shown necessity, lack of access, and that any such road over the property of contestees will be lawfully and legally continued over the lands of all landowners whose property lies between the public road and the lands of contestees, which proof has not been established.

"4. The said 80 acres has an outlet and connection with a public road, which outlet is convenient and available to the applicants.[5]

"5. The Board of County Commissioners has jurisdiction over the parties hereto as well as the subject matter hereof.[6]

5. This finding is contrary to the stipulation of the parties, which stipulation is also supported by the physical facts. The record does support the conclusion that the appellees have not been denied access—but that does not equate with having an outlet other than by sufferance.

6. The county commissioners make findings relating to the BLM without the BLM being present before them. An employee of the BLM did appear as a witness to explain that the

"6. The State of Wyoming and the United States of America are necessary and indispensable parties to this proceeding and the Board has no jurisdiction to determine if a private road should be granted in the absence of notice to all the owners of land over which the private road is applied for.

*  *  *  *  *  *"

The appellees then sought review of this action by the county commissioners in the district court. The district court considered the matter and entered an order reversing the action of the commission on June 4, 1979. In pertinent part that order provides:

### "1.

"That any road to the South that would cross the land of the Contestee, Two Bar Ranch Company, would of necessity, have to cross land belonging to the State of Wyoming. Under Article 18, Paragraph 3 of the Wyoming Constitution and the various regulations adopted by the Board of Land Commissioners, a private road may not be granted across State land. Pursuant to this authority and various statutes, the Board of County Commissioners Action should be affirmed insofar as it pertains to the lands of Two Bar Ranch Company, and said Company should be dismissed as to further proceedings.[7]

### "2.

"That proper notice was given to all owners of land over which the private road is applied for by Contestants. Since a private road cannot be acquired over State land, it was not necessary to give them notice. It was not necessary to give

public had access across the public lands by way of a road on BLM lands to which the appellees wish to connect.

7. Here the district court makes findings relative to the State and later as to the United States without either being a party. During oral argument, appellees disclaimed any interest in crossing State lands.

notice to the U.S. Bureau of Land Management, as the evidence shows there is a public road across the Bureau of Land Management land that can be joined with the private road from Contestants land. [See fn. 7.]

"3.

"That Section 24–9–101 of the Wyoming Statutes 1977 states that, '. . . any person whose land shall be so situated that it has no outlet to, nor connection to a public road, may make application in writing to the Board of County Commissioners of his county at a regular session, for a private road leading from his premises to some convenient road . . .'. The statute then proceeds to state that '. . . if the said Board shall find that the applicant has complied with the law, and that such private road is necessary, said board shall appoint three (3) disinterested freeholders and electors of the county as viewers and appraisers . .'. It was stipulated between the Contestants and Contestees, Fred McGuire and Mickey McGuire, that the eighty (80) acres in question has no outlet to a public road.

"4.

"It is the finding of the Court that the undisputed fact that the land of Contestants is land-locked is in and of itself a necessity, and that the Board of County Commissioners, in failing to appoint three (3) disinterested freeholders and electors of the county as viewers and appraisers, were in error, and that their decision should be reversed and the case remanded to the Board of County Commissioners.

"IT IS THEREFORE ORDERED ADJUDGED AND DECREED that this matter be remanded to the Board of County Commissioners of Platte County and that said Commissioners shall appoint the three (3) viewers and appraisers as provided under Section 24–9–101, Wyoming Statutes, 1977, and to thereafter follow the procedure set forth in said Section with instructions to the viewers and appraisers that in viewing and locating a private road according to the application of the Contestants, that they shall not proceed south of said eighty (80) acre tract.

"IT IS FURTHER ORDERED that Two Bar Ranch Company be dismissed as a Contestee."

It is conceded, and it has been a stipulated fact from the very outset of this case, that the appellees have no outlet to a public road. The issues as presented by the appellants are:

1. The district court erred in finding that the trail across the BLM lands is a public road. It is not a public road.

2. The district court erred in providing the relief it did because the appellees failed to give notice to all other landowners whose lands lie between the 80-acre parcel and the convenient public roads in the area.

3. The district court erred in finding that any road to the south which crossed Two Bar Ranch property would of necessity cross lands belonging to the State of Wyoming.

4. The district court erred in overruling the county commissioners on the issue of necessity.

5. The district court erred in finding that a private right-of-way may not be obtained over State lands.

The appellees are fully satisfied with the relief given by the district court and they defend its judgment (order) without reservation.

We will affirm the district court's remand to the county commissioners but with different directions.

In this case, we have an appeal from the Board of County Commissioners of Platte County to the district court. The district court is sitting as an intermediate appellate court with power only to *review* the action taken by the county commissioners. It is not within the prerogatives of courts to substitute their judgment for administrative authority or to perform duties assigned by law to administrative boards,

committees, and officers. *Sweetwater County Planning Committee for Organization of School Districts v. Hinkle,* Wyo.1972, 493 P.2d 1050.

The district court conducts its review in accordance with § 9–4–114, W.S.1977:[8]

"(a) Subject to the requirement that administrative remedies be exhausted and in the absence of any statutory or common-law provision precluding or limiting judicial review, any person aggrieved or adversely affected in fact by a final decision of an agency in a contested case, or by other agency action or inaction, or any person affected in fact by a rule adopted by an agency, is entitled to judicial review in the district court for the county in which such administrative action or inaction was taken, or in which any real property affected by such administrative action or inaction is located * * *. The procedure to be followed in such proceeding before the district court shall be in accordance with rules heretofore or hereinafter adopted by the Wyoming supreme court.

\* \* \* \* \* \*

"(c) The court's review pursuant to the provisions of this section shall be limited to a determination that:

"(i) The agency acted without or in excess of its powers;

"(ii) The decision or other agency action was procured by fraud;

"(iii) The decision or other agency action is in conformity with law;

"(iv) The findings of facts in issue in a contested case are supported by substantial evidence; and

"(v) The decision or other agency action is arbitrary, capricious or characterized by abuse of discretion."[9]

The central concerns of the district court's review are to ensure that the county commissioners adhered to the governing statute and to ensure that their factual conclusions are supported by the evidence. The county commissioners were charged with the responsibility of entertaining appellees' application under the statute and to render a decision in good faith and in conformity with the evidence presented to them.

■ It is this court's obligation to make sense out of a statute and give full force and effect to the legislative product. *Yeik v. Department of Revenue and Taxation,* Wyo.1979, 595 P.2d 965. In construing statutes, the intention of the law-making body must be ascertained from the language of the statute as nearly as possible. *Wyoming State Treasurer v. City of Casper,* Wyo. 1976, 551 P.2d 687. We must not give a statute a meaning that will nullify its operation if it is susceptible of another interpretation.

■ The parties stipulated that there was no outlet from the 80-acre parcel to, nor connection with, a public road. This is also abundantly clear from the record. There is no requirement in § 24–9–101, supra, that the land be in use at the time the application is filed or that the nature of its future use be disclosed. The appellees were therefore entitled to proceed under the statute. The first thing the appellants had to do was petition the county commissioners for a private road "leading from his [their] premises to some convenient public road." The applicant complied with the notice requirements. It appears plain in the statute that the applicant must ask for the road with some specificity because the viewers are to "meet on a day named * * * *on the proposed road,* and view and locate a private road *according to the application* therefor." The appellees merely said they wanted a road and gave notice to two parties and suggested that the road should go over the lands of one or the other but appellees did not know which, saying that was up to the viewers. The statutory language requires the applicants to set out a description of the road it proposes.

In this case, the appellees did not get beyond that first requirement. Their application did not fully comply with the law,

8. This statute has been amended, but this version governs in this appeal.

9. Subsection (c) was rewritten May 25, 1979. Ch. 58, § 2, 1979 Wyo. Sess. Laws.

and the county commissioners failed to follow the language of the statute. The parties and the agency are bound to follow the statutory procedure. *Meuse-Rhine-Ijssel Cattle Breeders of Canada Ltd. v. Y–Tex Corporation*, Wyo.1979, 590 P.2d 1306. Under these circumstances, it was incumbent upon the district court in its process of review to reverse the findings and conclusions of the county commissioners and direct entry of an order dismissing the application, without prejudice, for failure of the applicants to describe a road.

Some additional holdings are appropriate in order to return the case with some guidance in that it appears the matter will, in all likelihood, be renewed. It is proper for an appellate court to decide questions that are bound to arise again. *Chicago and North Western Railway Company v. City of Riverton*, 1952, on reh. 70 Wyo. 119, 247 P.2d 660. We agree with the district judge that the county commissioners' finding that the road was not "necessary" was unsupported by the evidence. The evidence clearly demands the opposite conclusion. We hold that any person whose land is so situated that it has *no* outlet—no legally enforceable means by which he can gain access—has demonstrated necessity, as a matter of law, without there being a further need to show that he lives on that land or that it is being, or will be, used for some specific purpose nor was it proper to inquire into impact on adjoining owners (other than the owners whose land will be taken), financial interest of applicants, use for hunting, fences and improvements, or whether permissive access had been denied. In our view, the word "necessary" in the statute refers only to the lack of the type of outlet we have described to a "convenient" public road.

The district court's order contains some surplusage in the light of our holding that the applicants must initially propose a road by some adequate description. The ultimate power to locate the road as proposed by the applicants rests with the viewers to be appointed by the county commissioners.

Once the commissioners have made their dual finding that the applicant has complied with the law and the road is necessary, the viewers then go to that spot and mark out the road. Of course, the applicant must make his request in good faith and the route chosen must be reasonable [10] and convenient—but, the route chosen does not have to be the *most* convenient and reasonable route possible taking into account all possible routes. It must be simply *a* reasonable and convenient route. See generally 2A Nichols, Eminent Domain, § 7.626 (3d ed. 1979); *Solana Land Co. v. Murphey*, 1949, 69 Ariz. 117, 210 P.2d 593, 598. Applicant may not leave on the doorstep of the viewers a request that they map out a convenient private road for the applicant. The applicant has the responsibility for studying alternative routes and asking in good faith for one that is reasonable and convenient. Only then may the applicant be said to have complied with the law so that the county commissioners have jurisdiction to proceed.

Once the viewers arrive at the proposed road, they then ascertain whether it is located "so as to do the least possible damage to the lands through which such private road is located." Section 24–9–101, supra. We read the language of the section to say that if the road as proposed is not so located, the viewers may alter its course and "stake out," one that does. In either event, the viewers after approving a route then proceed to ascertain damages "sustained by the owner or owners" over which the road is to be established and make a return to the county commissioners of their findings in that regard, along with a plat of the road they have located and marked.

When carefully studied, the statute is quite simple and must be followed. It has been made unnecessarily complicated by

---

**10.** It is always assumed that the legislature aims to promote convenience, to enact only what is reasonable and just. *Ramsay Motor*

*Co. v. Wilson*, 1934, 47 Wyo. 54, 65, 30 P.2d 482, 91 A.L.R. 908.

both the county commissioners and the district judge. Neither the county commissioners nor the district court are at liberty to graft onto the statute that which they think ought to be included or to delete that which they find inconvenient. Neither they nor we have authority to add to or delete from a statute. *Lo Sasso v. Braun*, Wyo. 1963, 386 P.2d 630.

There remains one question. In their brief and at oral argument, the appellees pointed out that their real objective is to cross the lands of the appellants Fred and. Mickey McGuire to join up with what is identified as the BLM road across lands of the United States, which road joins with a public road. According to the testimony of a BLM representative, it is used by the public; and the county commissioners found that it had been used by the public for some forty years. No authority has been presented that an individual may condemn land of the United States for a private road nor was the United States joined in this action.

The question then is whether connecting to the BLM road satisfies the terms of § 24–9–101, supra, as a convenient public road to which appellees may connect by the private road they desire to acquire.

■ The statutory section we examine does not define public road. *Nixon v. Edwards*, 1953, 72 Wyo. 274, 264 P.2d 287, cited by appellants, is not helpful because it involves no question of connecting to a federal road across public lands, such as we have here. State statutes pertaining to state and county roads and which do con-

tain some definitions are not applicable to roads such as the BLM road, the latter being under the jurisdiction of the United States. We cannot adjudicate its status so as to in any fashion bind the United States.[11] We are limited to generally describing it in the light of the statute we have before us.

■ The statute does not require connection with a public road that is state or county controlled. The evidence discloses that the public has traversed the BLM road for many years and a realty specialist from BLM testified that any United States citizen may travel existing roads or trails on public lands unless specifically closed by BLM and there appear to be no plans to close the road. The Board of County Commissioners specifically found as a fact which is probably a conclusion of law that § 3 of the Unlawful Enclosure of Public Lands Act, 43 U.S.C. 1063[12] prevents obstruction of free passage over public lands of the United States.

There is nothing in the record or findings of the Board of County Commissioners which would indicate that the public does not have free access to and across the BLM road. Upon that premise, then, we are at liberty to determine whether it is a public road within the contemplation of § 24–9–101, supra. It must be realized that public roads at the time of statehood were not what we conceive them to be under existing Wyoming statutes applicable to state and county roads. It is interesting to note that 43 U.S.C. 1063 was enacted the year (1885) before the territorial legislature adopted (1886) the predecessor to the statute we now have before us for interpretation.

---

11. As pointed out in Finding No. 21 of the county commissioners, supra, 43 U.S.C. 932 was repealed effective October 21, 1976. However, a road had been established long before that. When land is granted for a public road, the grant may be accepted by the public without action by public authorities. *Hatch Bros. Co. v. Black*, 1917, 25 Wyo. 109, 165 P. 518.

12. 43 U.S.C. 1063:
   "No person, by force, threats, intimidation, or by any fencing or inclosing, or any other unlawful means, shall prevent or obstruct, or shall combine and confederate with others to prevent or obstruct, any person from peace-

ably entering upon or establishing a settlement or residence on any tract of public land subject to settlement or entry under the public land laws of the United States, or shall prevent or obstruct free passage or transit over or through the public lands: *Provided*, This section shall not be held to affect the right or title of persons, who have gone upon, improved, or occupied said lands under the land laws of the United States, claiming title thereto, in good faith." (Emphasis in original)

It is a criminal offense to obstruct passage across public land. 43 U.S.C. 1064.

We must, therefore, define a public road in the general sense, keeping in mind what the enacting legislature must have intended at the time of passage of the act, when the State was just coming to life.

The status of BLM roads has been considered by at least one other court. In *Major v. Douglas County*, 1971, 6 Or.App. 544, 488 P.2d 808, the court there considered the test to be the right of the public to use it. There, like here, the general public had for many years enjoyed the right to use the BLM road; so, therefore, it was a public road within Oregon statutory language, "any public road within the county." That holding is no different conceptually than the general one used in the absence of an applicable statutory definition. A public road is one that the public generally—not merely a portion of the public—is privileged to use. *In re Penn Avenue*, 1956, 386 Pa. 403, 126 A.2d 715; *Galloway v. Wyatt Metal & Boiler Works*, 1938, 189 La. 837, 181 So. 187, 189; *Sumner County v. Interurban Transp. Co.*, 1919, 141 Tenn. 493, 213 S.W. 412, 413, 5 A.L.R. 765; *Heninger v. Peery*, 1904, 102 Va. 896, 47 S.E. 1013. Within the facts reflected by the record, then, we must conclude that the BLM road is a public road within the terms of § 24–9–101, supra.

Because of our dispositions, it is unnecessary for us to address definitively the other issues raised by the appellant.

A response to the dissent is in order. This method of obtaining a way of necessity originated in 1886. The language of the territorial statute as it appeared in 1886 was:

"Sec. 13. Any person whose land shall be so situated that it has no connection with any public road, may make application in writing to the county commissioners of his county at a regular session, for a private road leading from his premises to some convenient public road, and thereupon the said commissionere [sic] shall appoint three disinterested householders of the county as viewers, and cause an order to be issued directing them to meet on a day named in such order to view and locate a private road according to the application, and to assess the damages to be sustained thereby, and after being duly sworn or affirmed, faithfully and impartially to discharge the duties of their appointments, and after at least three days' notice given to all persons through whose lands such private road is to be located, such viewers shall proceed to locate and mark out a private road thirty feet in width, from certain point on the premises of the applicant to some certain point on the public road, so as to do the least possible damage to the lands through which such private road is located, and they shall also at the same time assess the damages sustained by the person and persons owning such land."

The statute remained into statehood in this form until it was amended in 1901. Ch. 11, §§ 1–3, Wyo. Sess. Laws. The statute has remained virtually unchanged since 1901. We consider it readily apparent that the legislature intended the procedure to provide in a local forum a readily available, economically affordable, and time efficient method whereby a landowner could obtain a means of access to his property.

Seemingly, there are few early cases interpreting or applying this statute. In *McIlquham v. Anthony Wilkinson Live Stock Co.*, 1909, 18 Wyo. 53, 104 P. 20, this court implicitly found that the statute was an alternative remedy and it was not intended to supplant the common-law right of a grantee to a means of access to his land over the lands of his grantor.

In *Hoffmeister v. McIntosh*, Wyo.1961, 361 P.2d 678, rehearing denied 364 P.2d 823, this court addressed several questions relating to the procedure for appeal from a determination made by a county commission. Perhaps the most significant aspects of that opinion are its suggestion that Rules 72 through 76, W.R.C.P.,[13] govern the procedure to be followed on appeal in the district court and its holding that the district court is without authority to adjudicate, as a fact, the question of necessity. In the opinion

13. These rules are now superseded and replaced by WRAP.

denying a rehearing, this court provided rather clear guidance to the district courts when it pointed out:

" * * * ·This means, of course, that the trial in the district court will be a review of the record and not a trial de novo. However, in that connection it should be remembered that such administrative tribunals are obligated in their disposition of cases to consider all relevant evidence and argument, and in an appeal from an inferior tribunal, the minutes, if incomplete, are subject to supplementation by competent evidence which would show actual occurrences before the agency." (Footnotes omitted.) *Hoffmeister v. McIntosh*, supra, 364 P.2d at 823–824.

This court gave some detailed attention to a similar proceeding in *Snell v. Ruppert*, Wyo.1975, 541 P.2d 1042. That case answered several questions left open in the early case of *McIlquham v. Anthony Wilkinson Live Stock Co.* supra, and made it clear that the proceedings before the county commissioners were administrative in nature, and that the appeal to the district court is an administrative review. A related matter was addressed by this court in *Big Horn County Commissioners v. Hinckley*, Wyo.1979, 593 P.2d 573. From the *Snell* and *Hinckley* cases, it is readily discernible that appeals from proceedings had before a county commission under § 24–9–101 are now governed by the Wyoming Administrative Procedure Act and Rule 12, WRAP. For years it has been recognized that county commissioners grant private roads.

We cannot agree that §§ 24–9–101 et seq., supra, were either impliedly or directly repealed by § 1–26–405, W.S.1977, or Rule 71.1, W.R.C.P. Implied repeals are not favored. *Nehring v. Russell*, Wyo.1978, 582 P.2d 67; *Thomas v. State*, Wyo.1977, 562 P.2d 1287.

Section 1–26–405 does not impliedly repeal §§ 24–9–101 et seq. Sections 1–26–405 and 24–9–101 are not so repugnant that the

earlier enactment, § 24–9–101, must fall. Section 1–26–405 read in context contemplates an action or proceeding in a judicial forum, as does Rule 71.1, W.R.C.P.

Section 1–26–405 first appears in a revision of Title 1, of the Wyoming Statutes as a part of ch. 188, § 1, 1977 Wyo. Sess. Laws.[14] This statute has reference to ways of necessity in relation to:

" * * * reservoirs, drains, flumes, ditches including return flow and waste water ditches, underground water pipelines, pumping stations and other necessary appurtenances, canals, electric power transmission lines, railroad trackage, sidings, spur tracks, tramways or mine truck haul roads required in the course of their business for agricultural, mining, milling, electric power transmission and distribution, domestic, municipal or sanitary purposes, or for the transportation of coal from any coal mine or railroad line. * * * "

Articles 1, 2 and 3 of ch. 27 dealing with public buildings and school sites; public utility plants and necessities; railroads; road ditch and flume companies; pipeline, telegraph, telephone; and, electric transmission companies, each have provisions requiring that the proceedings be conducted pursuant to the Wyoming Rules of Civil Procedure. It, therefore, appears that the section only applies to Art. 4, ch. 27, which upon publication in the Wyoming Statutes appears as part of Art. 4, ch. *26* [sic]. Nowhere is there any reference in ch. 27 [26] to its application to Title 24, of the Wyoming Statutes where this particular statute is found. The context and position of the section in the act are unmistakable indicia that the legislature intended to prescribe a different forum and different procedures for all the above listed types of condemnation than for private roads. *Hoffmeister v. McIntosh*, supra.

Section 24–9–101 provides a method to be initiated before an executive agency for the establishment of a private road. A close

---

14. This statute appears on page 880 of the 1977 Wyoming Session Laws and is numbered 1–27–404. This renumbering was apparently the result of codification; but, in any case, the statute now appears at 1–26–405, W.S.1977.

reading of pertinent statutes indicates that the McGuires would not qualify to pursue condemnation under §§ 1–26–401, et seq., W.S.1977. The procedure established by § 24–9–101, supra, has been appropriate to the needs of the people of this state, and apparently has worked satisfactorily over the years. The Board of County Commissioners is an appropriate body to deal with most such problems of a local nature, and avoids the necessity of burdening the district courts with these matters initially. No authority has been presented by the dissent which gives the judicial branch exclusive jurisdiction over eminent domain proceedings.

The assertion that Rule 71.1, supra, can be interpreted to have directly repealed §§ 24–9–101, et seq., also seems to stray beyond the bounds of this court's power to supersede acts of the legislature. We are empowered to make rules that are procedural in nature. Sections 24–9–101 et seq., create a substantive and jurisdictional right that our rule-making powers cannot change. To do so would be to usurp a power clearly vested in the legislature. This court cannot legislate by repealing that section.

The rule-making power of the Wyoming Supreme Court is restricted by statute.[15] We cannot by rule in any way change substantive rights or enlarge the jurisdiction of any court. It is obvious from the language of § 24–9–101, supra, that the legislature has granted county commissioners jurisdiction to adjudicate the establishment of private roads. This court has no authority to transfer that jurisdiction to the district courts which would then apply Rule 71.1, W.R.C.P. to such a proceeding.

"Jurisdiction" is the power to hear and determine the matter in controversy between the parties. *Begley v. Nall*, 1946, 62 Wyo. 254, 166 P.2d 466. A number of things are necessary to confer jurisdiction in its complete form. *First*, it must have general power over matters of the kind involved in a particular case; next, the proceeding must be initiated in some particular manner; and finally, there must be notice to the parties. *Padlock Ranch, Inc. v. Washakie Needles Irr. Dist.*, 1936, on reh. 50 Wyo. 253, 273, 61 P.2d 410, 411. In *State ex rel. Yohe v. District Court of Eighth Jud. Dist. In and For Natrona Cty.*, 1925, 33 Wyo. 281, 288, 238 P. 545, 547, this court rather extensively discusses jurisdiction; and, in its definition of "power," points out that a primary prerequisite is that a court before proceeding must have authority to do so. The county commissioners have statutory power in an original proceeding to condemn private roads. The district court has power to review those proceedings but not original jurisdiction.

In the case before us, the legislature has conferred authority on the county commissioners as a tribunal to create private roads. The district court can no more assume authority to create private roads than it can usurp the authority of the Public Service Commission to fix utility rates, or the authority of a city to grant liquor licenses or the state engineer to grant irrigation per-

15. Section 5–2–114, W.S.1977:

"The supreme court of Wyoming may from time to time adopt, modify and repeal general rules and forms governing pleading, practice and procedure, in all courts of this state, for the purpose of *promoting the speedy and efficient determination of litigation upon its merits.*"

Section 5–2–115, W.S.1977:

"(a) Such rules may govern:

"(i) The forms of process, writs, pleadings and motions and the subjects of parties, depositions, discovery, trials, evidence, judgments, new trials, provisional and final remedies and all other matters of pleading, practice and procedure; and

"(ii) Any review of or other supervisory proceedings from the judgment or decision of any court, board, officer, or commission when such review is authorized by law.

"(b) *Such rules shall neither* abridge, *enlarge* nor modify the substantive rights of any person nor *the jurisdiction of any of the courts* nor change the provisions of any statute of limitations." (Emphasis added.)

These statutes and their application are discussed in *State ex rel. Frederick v. District Court of Fifth Judicial District In and For County of Big Horn*, Wyo.1965, 399 P.2d 583, 12 A.L.R.3d 1, but with respect to an aspect of eminent domain over which the district court had original jurisdiction to act.

mits. Nor can it require the county commissioners to follow Rule 71.1, W.R.C.P. The above authority compels us to respond to the theory set out in the dissent.

The order of the district court is affirmed only in that it reversed the commissioners and remanded for further proceedings. The matter is remanded by this court to the district court with directions that it vacate its order and enter one reversing the order of the county commissioners and directing that any future proceedings be in conformity with the sense of this opinion.

ROONEY, Justice, dissenting.

## ENTREE

I must dissent from the majority holding in this case inasmuch as it sets the following very bad precedents:

1. It sets as a precedent that the Rules of Civil Procedure do not supersede procedural statutory provisions in conflict therewith.

2. It sets as a precedent the continued viability and use of §§ 24-9-101 through 24-9-103, W.S.1977, statutes which are unwieldy and inconsistent, statutes of questionable constitutionality, and statutes which were, first, superseded by Rule 71.1, W.R.C.P., and, then later, repealed by the legislature.

Since the procedure for condemnation provided in §§ 24-9-101 through 24-9-103 has been superseded by that provided in Rule 71.1, this matter was not processed under the proper procedure. The case should be dismissed without prejudice to the institution of proper proceedings.

To vividly illustrate the foregoing, it is appropriate to consider two background items: (A) the actual history of §§ 24-9-101 through 24-9-103 [1], and their historical relationship with other statutes and rules, and (B) the basic errors of the majority opinion.

## STATUTORY HISTORY

Sections 24-9-101 through 24-9-103 were originally enacted in 1886 (before statehood) as part of an act which also concerned public roads. In 1895 (after statehood) they were reenacted as part of an act entitled, "An Act to revise, amend and consolidate the Statutes relating to Highways and Bridges." Ch. 69, Session Laws of Wyoming 1895. The other parts of that act also concerned the location, establishment, altering and vacating of national, state, territorial and county roads, the construction and maintenance of them, and the levying of taxes therefor. These other parts concerned *public* roads. Sections 24-9-101 through 24-9-103 concern *private* roads. Thus, the original act and the revised act involved both public roads and private roads. Sections 24-9-101 and 24-9-103 were directly amended in 1901, but the amendments were minor and of no pertinency to this matter. Such sections now provide:

Section 24-9-101:

"Any person whose land shall be so situated that it has no outlet to, nor connection with a public road, may make application in writing to the board of county commissioners of his county at a regular session, for a private road leading from his premises to some convenient public road. Said applicant shall give at least thirty (30) days notice in writing to the owner or resident agent or occupant of all lands over which such private road is applied for, of the time of making such application to such board. If the owner of such land be a nonresident, and there be no resident agent upon which personal service can be had, then such notice may be published in some newspaper published in the county for three (3) weeks, the last publication shall be at least thirty (30) days before the hearing of said application, at which time all parties interested may appear and be heared [sic] by said board as to the necessity of said road, and all matters pertaining thereto. Upon the

1. These statutes are pivotal to the majority holding. Such holding is premised upon them, and they are upheld and applied in such holding.

hearing of said application, whether the owner or others interested appear or not, if the said board shall find that the applicant has complied with the law, and that such private road is necessary, said board shall appoint three (3) disinterested freeholders and electors of the county, as viewers and appraisers, and shall cause an order to be issued directing them to meet on a day named in such order on the proposed road, and view and locate a private road according to the application therefor, and to assess damages to be sustained thereby, and if for any reason such viewers and appraisers are unable to meet at the time set by the board to view said proposed road, they may fix some other date, but shall be required to give notice in writing to the owner or resident agent or occupant of said lands over which said road is proposed to be laid of the time and place where such viewers will meet, at least ten (10) days before viewing such road, at which time and place all persons interested may appear and be heard by said viewers. Before entering upon their duties such viewers shall take and subscribe to an oath that they will faithfully and impartially perform their duties under their said appointment as viewers and appraisers. Such viewers shall then proceed to locate and mark out a private road in accordance with said application, not exceeding thirty (30) feet in width from a certain point on the premises of the applicant to some certain point on the public road, so as to do the least possible damage to the lands through which such private road is located, and they shall also at the same time assess the damages sustained by the owner or owners over which such road is to be established and make full and true returns, with a plat of such road to the board of county commissioners."

Section 24–9–102:

"The viewers and appraisers appointed in accordance with the provisions of the preceding section [§ 24–9–101] shall have power to determine in all cases whether or not gates shall be placed at the proper points on said road, and assess damages in accordance with such determination."

Section 24–9–103:

"The viewers and appraisers so appointed, or a majority of them, shall make a report to the county commissioners at the next regular session, of the private road so located by them, and also the amount of damages, if any, assessed by them, and the person or persons entitled to such damages, and if the commissioners are satisfied that such report is just, and after payment by the applicant of all cost of locating such road, and the damages assessed by the viewers, the commissioners shall order such report to be confirmed and declare such road to be a private road, and the same shall be recorded as such. Any person aggrieved by the action of the board or as to the amount of damages awarded, may appeal to the district court at any time within thirty (30) days after said road is finally established by said board of county commissioners."

These statutes have been referred to as an "eminent domain proceeding" which "had its roots in §§ 32 and 33, Art. I, Wyoming Constitution." *Snell v. Ruppert,* Wyo., 541 P.2d 1042, 1045–1046 (1975).

Art. 1, § 32, Wyoming Constitution provides:

"Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and for reservoirs, drains, flumes or ditches on or across the lands of others for agricultural, mining, milling, domestic or sanitary purposes, nor in any case without due compensation."

Art. 1, § 33, Wyoming Constitution provides:

"Private property shall not be taken or damaged for public or private use without just compensation."

In 1953, the procedure outlined in § 24–9–101 was indirectly amended and materially changed by the legislative enactment of Ch. 181, § 2, Session Laws of Wyoming 1953 (now § 24–1–105(b), W.S.1977), which provides:

"(b). Any land owner or interested party desiring to raise any question with respect to the necessity of the taking of the land for road purposes under the provisions of Chapter 48, Article 3, Wyoming Compiled Statutes, 1945, shall do so by filing, within thirty (30) days after the last publication of notice of the proposed location of such road, a petition in the District Court of the county in which the land or any part thereof is located. The District Court shall within ten (10) days, if possible, from and after the filing of said petition hear and determine the question of necessity. Provided that when said petition is filed, the burden of showing necessity shall be sustained by the county or the State Highway Department. If no petition, to raise the question of necessity, is filed within the said thirty (30) day period, the necessity shall be presumed and the question cannot later be raised."

Chapter 48, Article 3, Wyoming Compiled Statutes, 1945, referred to therein, includes the statutes with which we are here concerned (now §§ 24–9–101 through 24–9–103, W.S.1977). Thus, the determination of the necessity for the taking was transferred from the board of county commissioners to the district court. However, the unwieldy and inconsistent nature of the procedure was not cured. It remained complex, time consuming and impractical.

Similar complexity and impracticability existed in the statutory procedures for condemnation for other purposes.[2] Furthermore, the several procedures were anything but uniform and consistent. To remedy such, Rule 71.1 was added to the Wyoming Rules of Civil Procedure, effective March 21, 1966. It provides in part:

2. Separate condemnation procedures existed for actions by school districts, cities, towns, railroad companies, counties for roads, cities for public utilities, state for highways, rights-of-way for telegraph, telephone, and petroleum or other pipeline companies, etc.

3. Ch. 53, § 1, Session Laws of Wyoming 1947 (§ 1–116, W.C.S.1945, 1957 Cum.Supp.) provides:

"The Supreme Court of Wyoming may from time to time adopt, modify and repeal general

"(a) * * * The Wyoming Rules of Civil Procedure govern the procedure for the condemnation of real and personal property under the power of eminent domain, except as otherwise provided in this rule."

There is no exception in the rule which would remove the proceeding in this case from application of the rule.

Rule 1, W.R.C.P. provides in pertinent part:

"These rules govern procedure in all courts of record in the State of Wyoming, in all actions, suits or proceedings of a civil nature, *in all special statutory proceedings* * * *. They shall be construed to secure the just, speedy and inexpensive determination of every action." (Emphasis supplied.) [3]

Rule 87(c), W.R.C.P. provides in part: "(c) * * * The sections of Wyoming Statutes, 1957, as amended, hereinafter enumerated, shall be superseded, and such statutes *and all other laws in conflict with Rule 71.1* shall be of no further force or effect * * *." (Emphasis supplied.)

The statutes here involved were not enumerated in Rule 87(c), but they are included within "all other laws in conflict with Rule 71.1." The procedure set forth in Rule 71.1 is completely incompatible with that set forth in the statutes here involved.

Under Rule 71.1, the action is commenced as in other actions, i. e., by filing a complaint and serving a summons. An answer is required only if the defendant desires to contest the right to take the property or the necessity therefor. Whether or not an answer is filed, the court holds an expedited

rules and forms governing pleading, practice and procedure, in all courts of this State, for the purpose of promoting the speedy and efficient determination of litigation upon its merits."

Beyond this, the court has an inherent power to make rules for the efficient and expeditious disposition of its official business. *Southern Pacific Lumber Company v. Reynolds*, Miss., 206 So.2d 334 (1968), citing several treatises.

hearing to determine preliminary or first phase matters, such as the necessity for the taking, its purpose, etc. Appraisers are appointed to determine the just compensation to be paid as a result of the taking. If a party is not satisfied with the appraisal award, he may have a jury determination of the issue of just compensation. All in all, the procedure is more simple, more direct, more rapid and more equitable than that provided by the statutes here involved. Certainly, the two procedures are in conflict, one with the other.

Although there are some material differences between Rule 71.1, Wyoming Rules of Civil Procedure and Rule 71A of the Federal Rules of Civil Procedure, Rule 71.1 is modeled after and is similar to Rule 71A. Prior to adoption of Rule 71A, the procedures for eminent domain in the federal area were also many and varied. The "system is atrocious" and the rule was necessary to "rescue the government from this morass." *Supplementary Report of the Advisory Committee*, 11 F.R.D. 222, 224, 226 (1952).

> "The purpose of Rule 71A was to make uniform and to simplify condemnation proceedings. * * *" *United States v. 3,065.94 Acres of Land, County of Tulare, California*, U.S.D.C.S.D.Cal., 187 F.Supp. 728, 732 (1960).

It is incongruous that the majority holding here rejects the court's own rule and refuses to apply it in this case toward the purposes for which it was adopted.

In 1977, the legislature recognized both the wisdom of the rule and the authority of the court in promulgating it by enacting legislation specifically repealing all other statutory proceedings for eminent domain:

> "*Any action or proceeding* to acquire title to or any interest in real or personal property of another by condemnation, *for any purpose whatsoever*, shall be commenced and conducted in accordance with Wyoming Rules of Civil Procedure."

(Emphasis supplied.) Section 1–26–405, W.S.1977.

The legislation, itself, may not be determinative in this case inasmuch as this case was started a few months before enactment of § 1–26–405, but it is a ratification and confirmation of the effect of Rule 71.1—one of the rules referred to in the legislation.

The history of §§ 24–9–101 through 24–9–103 reflects their demise and the replacement of them by Rule 71.1.

### BASIC ERRORS IN MAJORITY OPINION

The following are errors which are basic to the majority holding:

1. The majority opinion fails to recognize the effect of the 1953 amendment on the statutes in question. The 1953 amendment (now § 24–1–105(b)) transferred from the board of county commissioners to the district court the duty to determine the necessity for the taking. In the long run this error should be immaterial inasmuch as the entire procedure was superseded by Rule 71.1.[4] But insofar as the rationale of the majority opinion relative to the viability of §§ 24–9–101 through 24–9–103 is concerned, its failure to recognize and apply the provisions of § 24–1–105(b) is fatal. It is fatal to the contention that later Rule 71.1 and § 1–26–405 are inapplicable to §§ 24–9–101 through 24–9–103. It is fatal to the contention that the procedure was legislatively directed to be administrative rather than judicial. It is fatal to the contention that the judicial interest in eminent domain is "substantive rather than procedural." There is no ambiguity in § 24–1–105(b) and, as the majority opinion points out, the legislative intention must be gathered from the act itself and a meaning shall not be given to it which will nullify its operation if an interpretation can be given which will support such operation.

---

4. I do not disagree with the majority contention that the condemnor must set forth a proper description in his complaint or petition. My agreement with this position was emphatically set forth in my dissent in *Coronado Oil Company v. Grieves*, Wyo., 603 P.2d 406 (1979). I do disagree that such description can be in a petition filed under superseded statutes rather than in a complaint filed under superseding Rule 71.1, W.R.C.P.

2. The majority opinion attempts to avoid the plain and simple language of § 1–26–405 and resorts to a form of obtuse and contrived "reasoning" to contend that such statute did not repeal §§ 24–9–101 through 24–9–103. The language of § 1–26–405 is direct, concise, unambiguous and positive. It would be hard to imagine language that is more so. Section 1–26–405 clearly and definitely states that:

> "*Any* * * * proceeding to acquire * * * *any interest* in the real * * * property of another by condemnation, *for any purpose whatsoever,* shall be commenced and conducted in accordance with Wyoming Rules of Civil Procedure." (Emphasis supplied.)

The majority opinion attempts to rationalize that the words "for any purpose whatsoever" do not mean what they say by noting provisions relative to other eminent domain proceedings in the enactment containing § 1–26–405. The title to the enactment refutes such rationalization. It is also plain and unambiguous in indicating an intention to straighten out and make uniform *all* eminent domain procedures. The title reads in part:

> "AN ACT * * * to eliminate obsolete or fully executed statutes, to conform conflicting statutes, to eliminate duplicitous or archaic language; * * * providing for the procedures for prosecuting all forms of civil actions and conforming such procedures to the Wyoming Rules of Civil Procedure * * *." Ch. 188, Session Laws of Wyoming 1977.

As the rule is often stated:

> "Where language of a statute is plain, unambiguous, and conveys a clear and definite meaning, there is no occasion to resort to rules of construction. * * *" *Mountain Fuel Supply Company v. Emerson,* Wyo., 578 P.2d 1351, 1357 (1978).

And the same can be said of the language in Rule 71.1. It is simple, plain, direct, and unambiguous. It states that it "govern[s] the procedure for the condemnation * * under the power of eminent domain." There is no limitation or ambiguity in the language of Rule 87(c) which directs certain enumerated statutes "and all other laws in conflict with Rule 71.1 shall be of no further force or effect." The enumerated statutes are the ones to which the majority opinion would limit the application of the rule. If such were so, the words, "and all other laws in conflict with Rule 71.1," would be surplusage. Legislatures and courts are not presumed to do useless things. *DeHerrera v. Herrera,* Wyo., 565 P.2d 479 (1977); and see *Yeik v. Department of Revenue and Taxation,* Wyo., 595 P.2d 965 (1979) cited in majority opinion.

Sections 24–9–101 through 24–9–103 were intentionally and directly superseded by Rule 71.1. The same was later confirmed and ratified by § 1–26–405.

3. The majority opinion seeks to avoid the plain and unambiguous language of Rule 71.1 and § 1–26–405 by suggesting that § 24–9–101 creates a substantive right and a "jurisdictional right" and that therefore the Court Rules cannot apply to it. One quick but complete answer to this suggestion is that if such is so, then all other condemnation procedures which have been superseded by the rules are in the same boat. And even the majority opinion does not so contend. The proceeding under §§ 24–9–101 through 24–9–103 is an "eminent domain proceeding" which "had its roots" in §§ 32 and 33, Art. 1, Wyoming Constitution, *Snell v. Ruppert,* supra, 541 P.2d at 1045, 1046 (1975). These are the same constitutional provisions in which all other condemnation proceedings in the state of Wyoming have their roots.

Section 24–9–101 does not set the measure of damages to be paid upon condemnation, nor does it give the authority to condemn. Such is contained in §§ 32 and 33, Art. 1, Wyoming Constitution. These two things are the only substantive matters in condemnation.

> "* * * 'Courts generally agree in defining the terms "substantive" and "adjective" that "substantive" law creates, defines, and regulates rights as opposed to "adjective" or "procedural" law which provides the method of enforcing and protecting such duties, rights, and

obligations as are created by substantive laws. * * * '"  *State ex rel. Frederick v. District Court of Fifth Judicial District In and For County of Big Horn*, Wyo., 399 P.2d 583, 585 (1965).

That which was said for the federal court system in *Hanna v. Plumer*, 380 U.S. 460, 472, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965), can be said of our courts:

"* * * For the constitutional provision for a federal court system (augmented by the Necessary and Proper Clause) carries with it congressional power to make rules governing the practice and pleading in those courts, which in turn includes a power to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either. * * *"

The substantive aspects of eminent domain, at least insofar as the taking is for public use is concerned, is a sovereign right. It exists independently of constitutional and legislative provisions. See 29A C.J.S. Eminent Domain § 2 (1965). With reference to a taking for a public purpose,

"* * * constitutional provisions relating to the exercise of the right or power of eminent domain are but limitations on a power which would otherwise be absolute or without limit." 29A C.J.S. Eminent Domain § 3, p. 171 (1965).

Art. 1, § 32, Wyoming Constitution, sets this limitation—certainly with reference to a taking for public purpose, and insofar as such can be done with reference to a taking for a private purpose.[5]

Before they were superseded, §§ 24–9–101 through 24–9–103 provided the *procedure*, and only the procedure, for exercising a substantive right established by the constitution.

---

**5.** The constitutionality of a taking for a private purpose is referred to infra.

**6.** The majority opinion may also be erroneous in holding that the necessity exists *for a road* from the fact that the land is landlocked. The constitutional provision is for a private *way of necessity*. Such is not necessarily a road. The use of the property, the topography, etc. may

4. The majority opinion seeks to avoid the plain and unambiguous language of Rule 71.1 and § 1–26–405 by suggesting that the procedures set forth in §§ 24–9–101 through 24–9–103 have to do with "administrative" condemnations and are therefore not subject to judicial action. Again it can be noted that the legislature put the judiciary right smack in the middle of the procedure by enactment of § 1–26–405(b). The majority opinion has no hesitancy in "judicially" deciding that necessity existed for the road [6]—contrary to the "administrative" decision of the Board of County Commissioners. And from the time of the initial enactment of §§ 24–9–101 through 24–9–103, a judicial review and control were anticipated. In any event, that which has already been said relative to the specific legislative ratification of the use of the procedure in Rule 71.1 in condemnations, "for any purpose whatsoever," as set forth in § 1–26–405, reflects the legislative intent to have this type of condemnation be by the judicial method.

5. The majority opinion bases its conclusion that the BLM trail "is a public road within the terms of" § 24–9–101 on the contention that such section "does not define [a] public road" and that it "does not require connection with a public road that is state or county controlled." Attention is directed to the fact that § 24–9–101 was only a part of the original 1886 enactment (before statehood) and that such enactment was revised and amended in 1895 (after statehood) to include a definition of public roads:

"*All roads within this state shall be public highways which have been or may be declared by law to be national, state, territorial or county roads. All roads that have been designated or marked as highways on government maps or plats in

---

dictate the type of way for which there is a necessity. For example, the use and terrain may be, as here, for hunting and fishing, with a horse trail being sufficient—or even a pack trail in a wilderness area. In other instances, the existence of an airstrip may negate the necessity for other means of access.

the record of any land office of the United States within this state, and which have been publicly used as traveled highways, and which have not been closed or vacated by order of the Board of the County Commissioners of the county wherein the same are located, are declared to be public highways until the same are closed or vacated by order of the Board of County Commissioners of the county wherein the same are located, and the board or officer charged by law with such duty shall keep the same open and in repair the same as in the case of roads regularly laid out and opened by order of the Board of the County Commissioners." (Emphasis supplied.) Ch. 69, § 1, Session Laws of Wyoming 1895. Since this definition accompanied § 24–9–101 in the 1953 revision of the enactment, it is obviously the definition of public roads referred to therein.

It may be difficult to bring the BLM "trail" within the "convenient public road" requirement of § 24–9–101. Additionally the determination of the status of the BLM "trail" should probably not be made without the presence of the United States—as indicated by the majority opinion before it proceeded to do so.

With reference to this statute, the Tenth Circuit Court said on appeal from the U.S. District Court for the District of Wyoming:

" * * * The law is well settled that waiver of sovereign immunity is to be strictly construed, and it is plain that Congress did not give its consent to suits against it by private individuals seeking private roads." *Dry Creek Lodge, Inc. v. United States*, 10th Cir. 1975, 515 F.2d 926, 930.

### EPILOGUE

The foregoing illustrates the propriety of dismissing this action for failure to follow the proper procedure, i. e., Rule 71.1, and it illustrates the bad precedent set by the majority holding to the effect that the Rules of Civil Procedure do not supersede procedural statutory provisions in conflict therewith.

The precedent set by the majority opinion in giving continued viability to §§ 24–9–101 through 24–9–103 is also bad.

The procedure contained therein is unwieldy and inconsistent. This case has been in progress for over a year. Before amendment by § 24–1–105(b) in 1957, the procedure required a written application to the county commissioners "at a regular session." But before doing so, the applicant had to give 30 days' prior notice in writing to the "owner *or * * * occupant*" of the lands over which the road is to pass. But if the *owner* is a nonresident, publication for 3 weeks of a notice may be had, with the last publication to be at least 30 days "before the hearing" on the application.

Already the inconsistencies and potential problems are manifest. If the owner lives in New York, only publication is necessary—even if the occupant, one of owner's relatives or lessees—is resident on the land. But such occupant need not be notified. The notice must be given 30 days before filing the application *if given other than by publication*. If given by publication the 30 days are measured against the date of the "hearing." Will the hearing be on the date of the application? It was not in this case.

At the hearing, the board determines the necessity, and if it finds such it appoints the "viewers and appraisers" and sets a time for them to meet for the purpose of assessing damages and to "view and locate a private road *according to the application therefor.*" If they change the date of the meeting, notice must be given to the *owner* or *occupant* 10 days before the new date set for the meeting. Note that the owner may be vitally interested and the occupant, a lessee for example, may not care. Yet a notice to the occupant will suffice. There may be a question as to whether the viewers "locate" the road by ascertaining where the application says it will be and "marking" it on a plat, i. e., locating it "according to the application therefor" or whether they can "locate" it at some other place.

Then there is the additional problem of just what is a "convenient *public* road." There may be instances where the applicant only needs a way of necessity to the *private* road of someone else who has given him permission to use it. The wording of this statute does not accommodate such as do the provisions of Rule 71.1.

After the viewers and appraisers report to the county commissioners "of the private road so located by them, and also the amount of damages, if any, assessed by them, and the person or persons entitled to such damages," the commissioners confirm the report if they are "satisfied that such report is just." An appeal is provided to the district court.

The 1953 amendment places the onus on "any land owner or interested party" to petition the district court within 30 days after publication of the notice for a determination of necessity. What does this do if written notice was given without publication? In any event, the court determines the necessity, not the board of county commissioners. But, after the court determines the necessity, do the commissioners then have an opportunity to reverse the court by finding that the report is not "just" (as provided in § 24–9–103)?

Note that there is no provision for assessment of damages by a jury should any party so desire—as is provided in Rule 71.1.

Sections 24–9–101 through 24–9–103 are cumbersome, unwieldy and inconsistent. Undoubtedly such is part of the reason the legislature and court saw fit to repeal and supersede them.

Since I would dispose of this case on the basis that the proper procedure was not followed, I would not address a constitutional problem. However, it is proper to note that any taking for a private purpose is of questionable constitutionality. This general proposition is summarized in 26

Am.Jur.2d Eminent Domain §§ 25 and 26, pp. 668–671 (1966):

Section 25:

"The general rule is that in the exercise of the right of eminent domain private property can be taken only for a public purpose or use. In other words, it is settled generally that private property cannot be taken for other than a public use under any circumstances. * * * Condemnation for a nonpublic use is held to be a denial of due process, even though accompanied by full compensation to the owner.

"In certain instances, however, the constitutions of some of the states authorize the taking of private property for private uses—as, for example, ways of necessity, reservoirs, drains, flumes, or ditches for agricultural, mining, milling, domestic, or sanitary purposes—or any other use necessary to the complete development of the material resources of the state or the preservation of the health of its inhabitants.[7] But these provisions, and the statutes enacted thereunder, have ordinarily been construed as not intending to authorize a taking of private property without some public necessity or advantage."

Section 26:

"It has already been explained that a taking of property for private use cannot be authorized by Congress without violating the Fifth Amendment to the Constitution of the United States, and that such a taking, when authorized by a state, is in violation of the Fourteenth Amendment. Occasionally it happens that a decision of a state court that a taking is for a public use, involving only the constitutionality of a state statute under the usual constitutional provisions, is brought before the Supreme Court of the United States under the due process clause. Such questions more frequently arise, however, under special constitutional provisions found in several of the states declaring certain

---

7. Perhaps a taking for a private way of necessity can be justified for one of these reasons, but the justification must be rational.

uses as public which are generally not considered such. Such provisions are binding on the state courts so far as the constitutions of the states are concerned, but they cannot override the Fourteenth Amendment; and *a state statute which provides for the taking of property for a private use, though specifically authorized by the constitution of the state, can be overturned by the Supreme Court of the United States, or even by the highest court of the state itself*, since the Federal Constitution is binding on the courts of every state notwithstanding any provision in its own constitution. Especially is this the case when the state constitution does not declare a certain use to be public, but merely provides that property may be taken for that use, even if it is private." (Emphasis supplied.)

See 1 Nichols on Eminent Domain, § 4.7 at p. 4–29.

Finally, I note that the fact that this court has applied §§ 24–9–101 through 24–9–103 in disposing of other cases in the past and after such sections were superseded by Rule 71.1 is not a proper reason for refusing to acknowledge such supersedure. Courts often correct their own errors. In *Brown v. Board of Education of Topeka, Shawnee County,* Kan., 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), supp. opin. 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955), the Court struck down the previously approved doctrine of "separate but equal." In *Washakie County School District No. One v. Herschler,* Wyo., 606 P.2d 310 (1980), this court refused to approve the method of school financing, having acted previously on many cases relative thereto without such disapproval.

It is time to acknowledge that the unwieldy and conflicting §§ 24–9–101 through 24–9–103 were superseded by Rule 71.1. I would remand the case with direction to vacate both the order appealed from and the decision of the Board of County Commissioners without prejudice to institute proper proceedings under Rule 71.1 for the purpose of obtaining an alleged private way of necessity to and from the 80-acre tract of land.

McCLINTOCK, J., concurs in the disposition of the appeal suggested in the dissenting opinion of ROONEY, J.